MOBILE & O. R. Co. *v.* CAMPBELL.

[75 South. 554, In Banc.]

1. RAILROADS. *Operation. Injuries on tracks. Contributory negligence. Statutes.*

It was not the purpose of the legislature in enacting Laws 1910, chapter 135, providing that contributory negligence shall not be a bar to the recovery of damages for personal injuries, to repeal, alter, or modify either section 4046, Code 1906, providing, that it shall not be lawful for any railroads etc., to switch a car in the manner commonly known as a flying, running, walking, or kicking switch, etc., within the limits of a municipality, etc., nor

section 4047, providing that it shall be unlawful to back a train or engine at more than three miles an hour in a city, etc., and that for every injury inflicted by a railroad company while violating this section the party injured may recover full damages without regard to mere contributory negligence.

2. Railroads. *Collision. Free from negligence. Burden of proof.*
In a suit by the locomotive engineer of one railroad against another railroad company for personal injury sustained by collision at a crossing of the two roads, the *prima-facie* statute applied against the defendant, and the burden of proof was on it to exculpate itself from negligence.

3. Appeal and Error. *Review. Finding on conflicting evidence.*
Where all disputed facts have been resolved by the jury in favor of one party, their findings should not be disturbed unless produced by a clear misapplication of the law.

4. Railroads. *Collision. Freedom from negligence. Sufficiency of evidence.*
Under the facts as set out in its opinion in this case, the court held, that the evidence was insufficient to show that the defendant road was free from negligence, but was sufficient to warrant a finding that the employees of defendant road were making a flying or kicking switch in violation of section 4046, Code 1906, and that the cars had never been properly coupled together; also that the defendant railroad violated section 4047, Code 1906, by backing its cars into or along a passenger depot at more than three miles an hour without being preceded by a servant on foot.

5. Appeal and Error. *Harmless error. Instructions.*
Under the facts of this case, an instruction that it was unlawful for a railroad train to be operated within a city at more than six miles an hour, etc., also embracing the hypothesis contemplated by section 1353, Code 1906, providing that if any person shall run a locomotive across another railroad track without coming to a full stop he shall be fined or imprisoned etc., was harmless error.

6. Railroads. *Operation. Crossing other railroads. Negligence.*
Where two railroads intersected each other, and the locomotive of one road was standing on the crossing in charge of its engineer, a train of the other road, irrespective of any statute, was required to come to a full stop before attempting the crossing, even though the engineer in the other locomotive had gone upon the crossing without exercising due care and had wrongfully taken possession of the crossing.

7. RAILROADS. *Collision. Instructions. "Full".*

An instruction that it was unlawful for a railroad train to be operated within a city at more than six miles an hour, and for a train to back into or alongside a depot in a city at more than three miles an hour, etc., and that if the jury were satisfied that any of such laws were violated by the defendant road, and that plaintiff received injuries on account of such negligence of defendant road, it was their duty to return a verdict for plaintiff for full damages, was not erroneous in that the words "full damages" nullified defendant's plea of contributory negligence, since the instruction did not tell the jury that they must return full damages regardless of contributory negligence, which it said nothing about, while plaintiff had the right to present his contention that there was no contributory negligence, the word "full" in the connection in which it was used, had no particular significance.

8. RAILROADS. *Injuries at crossings. Contributory negligence. Statute.*

Where the locomotive engineer of one railroad was injured at a crossing where his locomotive stood, by being forced to jump therefrom by the negligence of another road in backing cars down upon him, he had an absolute right to recover regardless of his contributory negligence in going on the crossing without stopping.

9. NEGLIGENCE. *Contributory negligence. Affirmative defense. Burden of proof.*

The defense of contributory negligence is always an affirmative defense, and the burden of proof as to it is upon the defendant.

10. APPEAL AND ERROR. *Harmless error. Instruction.*

In an action for personal injuries where if the jury had followed the instruction by computing plaintiff's expectancy of life multiplied by his earning capacity, plus other damages than earning capacity, the award would have approximated fifty thousand dollars, but the verdict was for ten thousand dollars, error in such instruction on the measure of damages, stating that the jury might compute plaintiff's future earning capacity by his expectancy, multiplied by his earning capacity, without qualification that plaintiff's injury resulted in total disability, was harmless.

11. DAMAGES. *Personal injuries. Permanently injured.*

If an expert engineer has been rendered totally incapacitated to do service as an engineer, then he has been denied the privilege of pursuing his calling and it is proper to refer to him as permanently injured.

APPEAL from the circuit court of Lee county.

HON. CLAUDE CLAYTON, Judge.

Suit by H. D. Campbell against the Mobile & Ohio Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*J. M. Boone* and *W. D. Anderson,* for appellant.

We will present to the court together the refusal of the court below to grant the peremptory instructions for the defendant, and the overruling of the motion for new trial.

While it is true that this court has frequently held that where there is testimony tending to make out plaintiff's case, it is improper to grant the defendant a peremptory instruction; it is equally true that this court has laid down very clearly the rule to be as follows: "The circuit court would have been compelled, if such verdict had been rendered, to set it aside on the ground that it was not warranted by the testimony; and this fact is the best test of the propriety of his action in granting at the outset the peremptory instructions." *Flora* v. *Express Co.,* 92 Miss. 69; *Clark* v. *Moyse,* 48 So. 721; *McFadden* v. *Buckley,* 53 So. 351; *Dodson* v. *State,* 67 Miss. 33; *Fore* v. *Railway Co.,* 87 Miss. 218.

With reference to the instructions. The verdict of the jury for the plaintiff and the amount thereof is so contrary to what we think a fair and reasonable consideration given to the evidence in the case would justify, that we will argue fully each error to each instruction for the plaintiff, which we think the court made in granting the instruction; and seek to show that the jury was evidently misled into rendering their verdict.

Instruction No. 1. (For plaintiff): "The court instructs the jury for plaintiff, Campbell that it is unlawful for a railroad train to be operated within the corporate limits of a city at a greater rate of speed than six

miles an hour, and that it is unlawful for a train or part of train to back into or alongside a passenger depot in an incorporated city at a greater rate of speed than three miles an hour, and that within two hundred feet of said passenger depot a servant must precede the cut of cars not less than twenty feet nor more than forty feet and that it is unlawful for a train or part of train to go upon a crossing of another railroad track with its own without coming to a full stop just before going on the crossing; and that if the jury are satisfied by a preponderance of the evidence that all or any one of these laws were violated in the operation of the Mobile & Ohio train on the day of this accident and that plaintiff received injuries on account of the said negligence of said railroad company, then it is your duty under the law to return a verdict for him 'for full damages.''

The court in this charge made the following errors: 1. By it the jury were instructed with reference to a case that was not before the court or jury on the pleadings; they were told that it was unlawful for a railroad to operate a train within the corporate limits of a city at a greater rate of speed than six miles an hour. The pleadings did not allege a violation of the six miles statute; there was no claim for any rights under the six miles statute in the declaration, and the speed of the train in so far as the six miles statute is concerned, was wholly immaterial. Yet the court authorized the returning of a verdict for the plaintiff upon this statute, independent of all other questions involved in the case. This certainly making one case by the pleadings, and another case by the instructions of the court, which is never permissible. *Eaves* v. *Harris,* 95 Miss. 607, 49 So. 258; *Y. & M. V. R. R.* v. *Carrol,* 60 So. 1013; *Railroad* v. *Robinson,* 106 Miss. 896, 64 So. 838.

Before the comparative negligence statute was passed, recovery under section 4047 was permissible, regardless of mere contributory negligence; and the court below

evidently acted on the theory that section 4047 was yet in full force and effect.

In this charge the court stated a concrete case, stating the facts that would justify the plaintiff to recover, and therefore it cannot be said that this instruction was cured by another instruction, either for plaintiff or defendant, properly stating the law. *Mahaffey* v. *Russell,* 100 Miss. 122, *Godfrey* v. *Meridian etc., Co.,* 58 So. 534, 101 Miss. 365.

Instruction No. 2. (For plaintiff). "The court instructs the jury for the plaintiff that the measure of damage, if the jury believe that the plaintiff has been injured by the negligence of the railroad company, is the amount that will compensate him for his injuries; and in computing this amount it is proper for the jury to take into consideration his actual damage, including mental and physical pain, loss of time, expense of doctors' bills, drugs and if the jury believe by a preponderance of the evidence that the plaintiff's injuries, received by the negligence of the defendant are of a permanent nature, then, they may compute his future earning capacity by his expectancy multiplied by his earning capacity, if the jury are satisfied from the evidence that he had any expectancy and earning capacity."

We admit that it is extremely difficult to tell what this instruction means, as to how the jury are to compute the future earnings of the plaintiff. If it means that the jury were authorized to multiply his life expectancy by his present annual earnings, which was shown to be something like two thousand four hundred dollars a year, and we think that this is the only intelligent interpretation of the language of this instruction, then it is erroneous for the reason that plaintiff at most was only entitled to the present cash value of his expectancy. He was not entitled, under the law, in cash, to the full value of his expectancy, as told in this instruction, but was only entitled to its present cash value. *Cumberland Tel. Co.* v. *Anderson,* 89 Miss. 732, 8 Ruling Case Law, section 204.

The plaintiff was entitled to recover, if at all, only for his diminished earning capacity during his probable life expectancy.

Instruction No. 4 (For plaintiff). "The court instructs the jury for the plaintiff that if you believe from a preponderance of the evidence that the accident complained of occurred from either of three proximate causes, that is; as a flying switch, or from unlawfully backing a train or part of train within two hundred feet of a passenger depot, or from the unlawful failure to have an employee precede said backing train not more than forty nor less than twenty feet in advance of said backing cars, then you must find for the plaintiff regardless of mere negligence of plaintiff, and the form of your verdict will be: 'We, the jury, find for the plaintiff and assesses his damages at blank dollars' filling in the blank with the amount of your verdict."

This instruction is erroneous, (1) because it instructs the jury that the three causes referred to in the said instruction are proximate causes. Thus finding as a matter of law that they were proximate causes, instead of leaving it to the jury to say whether or not these three causes existed, and were proximate causes. *Y. & M. V. R. R.* v. *Smith*, 60 So. (Miss.) 73, Underwood's Evidence, Record 111; Jenning's Evidence, Record 130.

Instruction No. 5 (For plaintiff). "The court instructs the jury for the plaintiff that the employees of one railroad have the right to use the crossing of the two railroads for switching purposes, when they use the same with ordinary care; they have a right to presume that the laws of the land will not be violated by the employees of the other railroads, and that it is not even ordinary negligence much less wanton and reckless conduct to look ahead for signals while on a crossing of another railroad track."

This instruction was evidently based upon the testimony of plaintiff, Campbell, wherein he stated that he did not look back towards the crossing, but that he kept

his vision in other directions watching his own crew, because he presumed the Mobile & Ohio people would observe the law; and is an effort to prevent the jury from being influenced by this testimony of Campbell, although Campbell did state that he saw the train coming some six hundred feet away. This instruction was not only misleading but is not the law of the land. While plaintiff may presume that defendant will observe the law, yet this does not absolve him from the duty to exercise care and caution to protect himself. *Hackson* v. *Railroad,* 89 Miss. 32; 33 Cyc., Page 738; *McNeil* v. *Bay Springs Bank,* 56 So. 333.

Instruction No. 6 (For plaintiff). This instruction is erroneous for the same reasons, on the question of the measure of damages, as urged above against instruction No. 1 for plaintiff on this point.

We respectfully submit that the errors in these charges entitle the defendant to a reversal of this case.

*Lester G. Fant,* for appellee.

It is not contended in the brief of the appellant that plaintiff did not make out its case. On the contrary, the record discloses that at the close of plaintiff's testimony, counsel for the railroad company did not have the hardihood to even ask that the testimony be excluded and a peremptory instruction granted the defendant; and had they done so they would have made themselves ridiculous. In addition to the fact that plaintiff would have been more entitled to have had a peremptory instruction to find for the plaintiff than the defendant would, this court has, as I understand it, approved the doctrine of comparative negligence and held that in all cases where a question of negligence was involved, that the jury must decide the rights of the parties. See Laws 1910, Chap. 135; *Railraod Co.* v. *Crawford,* 99 Miss. 697, and *Railroad Co.* v. *Carroll,* 103 Miss. 830.

This court in the case of *Robertson* v. *Ill. Cent. Railroad Co.*, 17 So. 235, states the rule as it existed long prior to the Act of 1910, in which they state that they are not called upon to pass on the weight of the evidence of the woman as to when the whistle blew, although all the railroad employees testified one way and this lone woman testified to the contrary unsupported by any other evidence, the court very wisely says that different minds are affected different ways by evidence, and that it is not the province of the supreme court to weigh evidence at all but to leave that to the jury.

### WITH REFERENCE TO THE INSTRUCTIONS.

Instruction No. 1 given to plaintiff is complained of because the pleadings did not state that there was a violation of the six-mile statute, yet on page 2 of plaintiff's brief this very violation is alleged in the following language, quoted from the declaration: "Exceeding the limit allowed by law for backing a train within the corporate limits of an incorporated town." This being three miles and the other being six miles, we hold that the allegation in the declaration covers this very point.

The case of *Eaves* v. *Harris*, 95 Miss. 607, is cited as authority for this objection to this charge. When we look at this case we find that it is a suit *in assumpsit*, and the plaintiff simply alleged the making of the contract and its breach, the declaration containing no allegation whatever of circumstances surrounding the party, or any special circumstances that would warrant the recovery of special damage. We respectfully state with due respect to counsel filing the brief, that the case of *Eaves* v. *Harris*, is not in point.

His next objection to the words "full damage" is taken in connection with the fact that the jury is charged that if they believe that the accident was caused by the negligence of the railroad company, that the plaintiff would be entitled to "full" damage. If the defend-

ant sought to invoke the law of comparative negligence, it was their right and duty to ask a charge on that line. The case cited from the supreme court of Iowa in the 101st., American State Rep. 254. does not apply because that was a suit by the state for a penalty, and although a failure to stop may sometimes occur notwithstanding the utmost efforts of the engineer (and in such event the remission would not be regarded as unlawful), does not apply to this charge in question, for the reason that it was left to the jury to decide whether or not there had been a violation of the statute, and consequently whether or not there had been negligence on the part of the railroad company.

We respectfully submit that the case of *Mahaffey Company* v. *Russel,* as reported in 100 Mississippi, at page 126, does not apply to this charge because the charge complained of did not state a concrete statement of facts, but says that it is unlawful to do certain things; but the language is that if the jury are satisfied by a preponderance of the evidence that all or any one of these were done by the M. & O. train on the day of this accident and that the plaintiff received injury on account of the said railroad company, then they should find for the plaintiff and assess his full damages. In the Mahaffey case the court held that there was a concrete statement of facts, which was not lawful. This charge correctly states the law. In the case of *Godfrey* v. *Railroad Co.,* the court held that the charge was not good because it assumed as true, controverted facts. This charge does not assume any fact to be true except that it was unlawful to run a train more than six miles and hour within an incorporated town and that it was unlawful to back a train along a passenger depot at more than three miles an hour, and that was unlawful to so back a train without having a servant of the railroad not less than twenty feet nor more than thirty feet preceeding the car, and that it was unlawful to back the train on another rail-

road crossing without a stop; and left it up to the jury to decide whether or not these laws had been violated.

His last contention, that the court should add to our charge in order to make it illegal, the words "regardless of contributory negligence," we take it to be gratuitous as there is no connection between the two charges. His objection to charge No. 2 is not well taken for the reason that nowhere in said charge is the law stated to be that they should give the plaintiff the cash equivalent to his expectancy multiplied by his earning capacity, but the charge specifically states that the measure of the damage "is the amount that will compensate him (plaintiff) for his damage." In computing the damage it is proper for the jury to take into consideration his actual damages including mental and physical pain, loss of time, expense of doctors' bills, drugs, and so forth, and if the jury believe by a preponderance of the evidence that plaintiff's injuries received by the negligence of the defendant were of a permanent nature, that they may compute his future earning capacity, and then give him an amount sufficient to compensate him for whatever loss he has sustained, if the jury is satisfied from the evidence that he had an expectancy and an earning capacity.

This charge is also to be taken in connection with charge No. 3. The citations of appellant in support of this objection to the charge, do not, in our judgment, apply to the charge in question. The case of *Cumberland Telephone Co.* v. *Anderson,* 89 Miss. 732, had a different charge entirely from the charge in question, and Judge WHITFIELD condemns it because of the last clause; and the last clause was this: "In fixing upon the amount of such pecuniary damage, you will take into consideration the loss to the mother of the services of Edward until he would have arrived at the age of twenty-one years, and the loss of prospective gratuities from him to his mother after he became twenty-one years of age. Judge WHITFIELD said the last clause of this instruc-

tion was manifest error. We submit that there was no such clause in our charge.

The case cited of *Chesapeake & Ohio Railroad Co.* v. *Kelly,* at page 630 of the advance sheets of the Lawyers Co-operative Edition of July 6, Mississippi case. Their objection to instruction No. 4, might be a very good objection to its grammar. It does not charge, as we read it, that the three things are proximate causes, but leaves it to the jury to state if they believe these things were the proximate causes of the injury.

The court did not make any error in refusing the charge quoted on page 53 of defendant (appellant) because while this charge was refused, the second charge given is in almost the identical language, as follows: ''The court instructs the jury for the defendant that although they may believe that the M. & O. train went up the railroad crossing without stopping just before going on the crossing, yet if this was not the result of negligence, but on account of an emergency over which defendant had no control and could not reasonably prevent, then this act of going upon the crossing will not of itself entitle the plaintiff to a verdict.'' A perusal of the two instructions will, I think convince the court that they are absolutely the same.

Instruction No. 5 that they complain of is certainly the law as we understand it, and nowhere in that instruction is it ever stated that the crew of one railroad might go on the crossing of another railroad without looking to see if they were in danger.

Instruction No. 3, 4 and 11, given defendant are not, as we view it, in conflict with instruction No. 5 given plaintiff. Instruction No. 3, 4 and 11, given for defendant had reference to what happened before plaintiff got on the crossing; instruction No. 5 given plaintiff refers to what happened after plaintiff got on the crossing. Instruction No. 4 to defendant, also, had reference to his duties before he got on the crossing, as does instruction No. 11, while instruction No. 5 given plaintiff only has

reference to the rights of plaintiff after he got possession of the crossing, and there is no real conflict between the charges given for plaintiff and those given for defendant.

STEVENS, J., delivered the opinion of the court.

Appellee as the plaintiff in the court below instituted this action against appellant to recover damages for personal injuries sustained by him in a collision at Tupelo, July, 1914. Mr. Campbell was one of the regular engineers of the Frisco Railroad Company, and as such engineer had an earning capacity of at least two thousand four hundred dollars per annum. At the crossing in Tupelo, Miss., where plaintiff was injured, the Mobile & Ohio runs approximately north and south and the Frisco Railroad approximately east and west. Plaintiff was in charge of his Frisco engine doing switching on the Frisco Track at the point where it is intersected at right angles by the main line of the Mobile & Ohio. The evidence for the plaintiff, and indeed the overwhelming weight of testimony, shows that Mr. Campbell at the time of the collision was in possession of the crossing, and had been switching forward and backward at the crossing for some fifteen or twenty minutes prior to the collision. While thus upon the crossing the tender of Campbell's engine was violently struck by several loose runaway cars of the Mobile & Ohio Railroad Company moving northward over the Mobile & Ohio tracks. The impact was so violent that Campbell's engine was hurled some distance northward along the Mobile & Ohio tracks, and a bad wreck was left as a testimonial of some one's negligence. The plaintiff in his declaration averred that he was operating his engine on the St. Louis & San Francisco Railroad crossing in accordance with all the rules and regulations of his company, and that he was using due care and caution; that in doing his switching he had been occupying that part of the track which crosses the Mobile & Ohio Railroad in the town of Tupelo for some

fifteen or twenty minutes; that in order to switch the cars it was necessary for him to move his engine to and fro on said crossing, and that while plaintiff was thus engaged, one of the freight crews of the defendant company backed or shoved a cut of loose cars in a northerly direction from a point some hundreds of feet south of the crossing at a great rate of speed, which exceeded the limit allowed by law for backing a train within an incorporated town, and which exceeded the limit allowed for backing a train alongside a passenger depot; that the said freight crew moved the Mobile & Ohio engine and cars in a reckless and grossly negligent manner, and rushed the same upon the crossing without observing any care or caution to prevent an accident, and collided with Mr. Campbell's locomotive without giving warning or without stopping; that when plaintiff became aware of the sudden onrush of the freight train, it was too late to move his engine off the crossing, and in order to save his own life he was forced to jump from his engine, and in doing so, fell upon a brick pavement in such way as to sprain his ankle, wrench his back, and permanently injure him. The defendant under its plea of the general issue gave notice that under section 1353, Code of 1906, it is the duty of any person running a locomotive propelled by steam upon or across the tracks of another railroad to come to a full stop just before it approached the crossing tracks, and that the plaintiff had violated this statute by himself coming upon the crossing with his engine without coming to a full stop. Secondly, it gave notice that the plaintiff received his injuries as a result of his own negligence, in that he went upon the crossing without due care and caution and without observing whether or not the track was clear; and that defendant's employees were flagging him in an effort to prevent his coming upon the crossing, and that plaintiff failed to obey the signals. After issue joined, the cause was tried by the court and jury.

The evidence offered on behalf of the plaintiff fully sustained his contentions that he was upon the crossing some fifteen or twenty minutes prior to the time of the collision; that the locomotive and cars of the defendant company which collided with plaintiff's engine were being operated at a high and dangerous rate of speed, estimated by the plaintiff's witnesses from twelve to twenty-five miles an hour, all within the corporate limits of the city of Tupelo and along the regular passenger depot. The proof shows that the Mobile & Ohio train was engaged in switching; that the locomotive was not in charge of the regular engineer, but that the fireman with two negro brakemen had been directed to shove a cut of freight cars from the yard south of the crossing up the main line of the Mobile & Ohio tracks to what is termed the "house track." The Mobile & Ohio locomotive was shoving these twelve cars in such way that it is difficult to determine whether the engine had been in fact securely coupled to the cars or not. The regular engineer at the time of the collision was some distance north of the crossing. The train also was not in charge of its regular conductor. The conductor, Mr. Underwood, had left his crew at the south end of the yard, with directions to the fireman to operate the engine and shove these loose cars up the line. The head brakeman and only white brakeman connected with the train, was also away from his post of duty, engaged in unloading freight at the freighthouse several hundred yards north of the scene of the accident.

The testimony shows that the acting engineer was a fireman, and nothing more than a fireman, and had never been licensed to operate an engine. The Mobile & Ohio engine, with the twelve freight cars, proceeded to move from one of the switch tracks of the Mobile & Ohio on to the main line, and proceeded north towards the crossing, and in doing so according to the plaintiff's testimony, and according to the overwhelming testimony for both plaintiff and defendant, moved at a rapid rate of

speed variously estimated by the witnesses from five to
twenty-five miles an hour. The witnesses for the plain-
tiff estimated the speed from twelve to twenty-five miles
an hour. In moving at this rate of speed the train was
approaching a prominent crossing, in the northwest
angle of which was located the regular passenger depot
at Tupelo. There is no question, then, about the fact
that the train was being backed at a great and reckless
rate of speed toward and along the regular depot, with-
out being preceded by any kind of a flagman, and with-
out stopping before going upon the crossing. The violent
impact of the train with Campbell's engine shows that
the cut of cars was approaching the crossing at a rapid
rate of speed. At that time there does not seem to have
been a regular flagman at the crossing, but Conductor
Underwood, with flags in his hands, stood upon the
crossing, and attempted to flag down or stop the fast-
backing train, and thereby to avert a collision. The
acting engineer in charge of the Mobile & Ohio engine
reversed his engine in emergency, and in doing so, ac-
cording to the defendant's theory, "broke" some of the
cars loose, and these loose cars were responsible for the
collision. This is really the only excuse offered by the
defendant for the collision. It appears to be the theory
of the defendant, and this is the argument of counsel,
that the engineer, in attempting to stop, broke his train
in two, and from this it is argued that no one could
have averted the so-called accident. The proof, how-
ever, does not show that a coupling broke in two, but
some of the defendant's witnesses offered the theory
that when the engineer reversed his engine, the draw-
head of one car slipped over the other at a time when
the cut of cars was nearing the crossing. In other
words, the only cause of the collision is based upon a
"low drawhead." The argument of counsel is largely
directed to the application of certain statutes which we
set out as follows: Section 4047 of the Code is as fol-
lows:

"Backing into or along a Passenger Depot.—It shall be unlawful to back a train of cars, or part of a train, or an engine into or along a passenger depot at a greater rate of speed than three miles an hour; and every such train, part of a train, or engine backing into or along a passenger depot, and within fifty feet thereof, shall, for at least three hundred · feet before it reaches or comes opposite such depot, be preceded by a servant of the railroad company on foot, not exceeding forty nor under twenty feet in advance, to give warning. For every injury inflicted by a railroad company while violating this section, the party injured may recover full damages without regard to mere contributory negligence."

Section 4046 of the Cods is as follows:

"Running, Flying, Walking, or Kicking Switches.— It shall not be lawful for any railroad company or other person to switch a railroad car in the manner commonly known as a 'flying,' 'running,' 'walking' or 'kicking' switch, within the limits of a municipality; and, in case of injury resulting to any person or property from switching in violation of this section, the railroad company shall be liable in damages, without regard to mere contributory negligence of the party injured."

Section 1353 reads as follows:

"(Railroads); Locomotives to be Stopped in Certain Cases, etc.—If any person shall run, or cause to be run, a locomotive propelled by steam upon or across the track of any other railroad company without first coming to a full stop just before it comes upon or across such track, he shall, on conviction, be fined not less than twenty-five dollars nor more than one thousand dollars, or imprisoned in the county jail not more than one year, or both; and if, by reason of his coming upon or across such track, some person shall be killed or injured, he shall, upon conviction, be imprisoned in the penitentiary not more than fifteen years."

The jury returned a verdict for the plaintiff and assessed damages at ten thousand dollars. It is claimed

by appellant that the law was not properly given in charge to the jury, and complaint is especially made of instruction No. 1 which reads as follows:

"The court instructs the jury for the plaintiff, Campbell, that it is unlawful for a railroad train to be operated within the corporate limits of a city at a greater rate of speed than six miles an hour, and that it is unlawful for a train, or a part of a train, to back into or alongside a passenger depot in an incorporated city at a greater rate of speed than three miles an hour and that within two hundred feet of the said passenger depot a servant must precede the cut of cars not less than twenty feet, or more than forty feet; and that it is unlawful for a train, or part of a train, to go upon the crossing of another railroad track with its own, without coming to a full stop just before going on the crossing, and that if the jury are satisfied by a preponderance of the evidence that all or any of these laws were violated in the operation of the Mobile & Ohio train on the day of this accident, and that plaintiff received injuries on account of the said negligence of the said railroad company, then it is your duty, under the law, to return a verdict for him for full damages."

It is contended on behalf of the appellant that this instruction authorizes a recovery for full damages without regard to contributory negligence. Counsel for appellee meet this criticism by the contention that under the express provisions of sections 4046 and 4047 plaintiff was entitled to recover "full damages without regard to mere contributory negligence;" and in any case the defense of contributory negligence is an affirmative defense, and that the issue of contributory negligence was fairly submitted to the jury under proper instructions. Much is said about the application of section 1353 of the Code, which does not contain a provision to find for full damages without regard to mere contributory negligence. This statute provides that if any person shall run a locomotive propelled by steam upon or across the

track of another railroad without first coming to a full stop, he shall be subject to prosecution and to punishment. Appellant contends that the enactment of chapter 135, Laws of 1910, providing that contributory negligence shall not be a bar to the recovery of damages for personal injuries, operated to repeal those provisions of sections 4046 and 4047, authorizing a recovery "without regard to mere contributory negligence." In other words, it is contended that, even though sections 4046 and 4047 were violated, plaintiff could not recover "full damages." These statutes were designed to protect the public and to enforce a high degree of care under the circumstances therein mentioned.

In our judgment it was not the purpose of the legislature in enacting chapter 135, Laws of 1910, to repeal, alter, or modify either of these Code sections. The act of 1910 does not expressly refer to these Code sections, and all three statutes can well stand and operate together. Prior to the enactment of chapter 135, Laws of 1910, where the plaintiff was guilty of contributory negligence he could not recover; the contributory negligence was a bar to his right of recovery. The purpose of the new statute is simply to afford a right of recovery in those cases where plaintiff's negligence had operated as a complete bar, and not to give any one sustaining personal injuries a right to sue in all cases where the defendant's neligence contributed in whole or in part to the injuries complained of. It is contended that instruction No. 1 authorized the jury to award the plaintiff "full damages" if the jury are satisfied that all or any one of the statutes referred to was violated; that under section 1353 full damages without regard to plaintiff's negligence could not be allowed, and the embracing of this statute renders the instruction fatally defective.

In determining liability in this case, and especially in considering the correctness of this instruction, it is well to remember that the *prima-facie* statute applied against the appellant, and the burden of proof was upon it to

exculpate itself from negligence. This, in our judgment, it has not done. What is the showing made by the Mobile & Ohio Railroad Company? There is some conflicting testimony, and all disputed questions of fact have been resolved in favor of the plaintiff, Campbell, and their findings, unless produced by a clear misapplication of the law, should certainly not be disturbed. But aside from any disputed facts, the scene enacted by the defendant company at the time of the injury complained of speaks louder than the words of legal argument. According to the plaintiff's testimony, evidently believed by the jury, and demonstrated by the force of the impact, the train was backing up the main line at a high and dangerous rate of speed, and under circumstances which justify some of the witnesses in referring to the cars as a "flying" or "kicking" switch. The only explanation offered by the defendant was that there was a low drawhead. But does this explanation really explain? If the cut of cars were ever properly coupled, it would appear that the couplings should have been such as would hold the several cars together under an emergency of this kind. There is no contention that a good coupling had broken in two, but the admitted fact that a drawhead was too low to hold. In addition to an admittedly bad drawhead, it was fairly inferable from the testimony, and the jury was warranted in concluding, that the fireman, inexperienced as an engineer, reversed his engine with such violence that his improper handling of the engine caused the train to break in two. The very fact that the train broke in two and caused a violent collision speaks for itself and calls for a sufficient explanation. The showing of the defendant was insufficient. There was no effort at any better showing.

More than this, if we accept at par the testimony offered on behalf of the plaintiff, as the jury evidently did, there is evidence warranting the jury in believing that a "flying" or "kicking" switch was being made. Mr. Tom Hall, the general foreman of the mechanical

department of the Frisco at Tupelo, was standing on the south side of the Frisco Railroad one hundred and twenty or one hundred and twenty-five feet west of the crossing and in plain view of the collision. He testified that the backing cars were going about twenty-five miles an hour; that they were not attached to the engine; that at the time he observed them rapidly approaching the crossing they were some three or four car lengths from the engine; and that they were making a "flying" or "kicking" switch. One question and answer from his testimony is as follows:

"They were making what you know as a 'flying' switch, was it? A. Yes, sir."

Mr. Walter Wood, who had been living in Tupelo twelve years and who had been doing regular switching for the Frisco Railroad six years, was an eyewitness to the collision, and in answer to a question as to how fast the cars were coming when they struck the tank of Campbell's engine, responded: "I judge ten or twelve miles."

Mr. R. M. Whitlock, a citizen of Tupelo for nine years in charge of a finishing machine at the Tupelo Cotton Mill, saw the approaching cars and stated: "They looked like they might be making twelve or fourteen miles an hour."

Mr. Campbell testified that in doing some switching or placing some cars down the house track, his engine had been cut off from the cars he was placing, that the whole length of his tender was over the Mobile & Ohio track at the crossing, and while so situated the Mobile & Ohio cars came up the line "cut from the engine." The following appears from his testimony:

"Q. They (the cars) were not connected with the engine? A. No, sir. Q. Going to make what you call a 'flying' switch? A. 'Flying' switch. Q. Going at eighteen or twenty miles an hour? A. Yes, sir. . . . Q. What did you do? A. The conductor gave me the alarm. Q. What did he say to you? A. He hollered to me to get off the engine, and the time he hollered, he

called my name and told me, he says, 'For God's sake, leave that engine!' and they were so close I dasent go out the gangway. I knew they would hit the tank, and I went back and jumped out the side window. . . . Q. When you went out, what happened to you? A. I fell on the concrete walk on my left side."

We quote the testimony to show that there was sufficient evidence to warrant the jury in finding that the Mobile & Ohio employees were in fact making a kicking switch, and that the cars never had in fact been properly coupled together. While there is some evidence, especially some statements made by Mr. Underwood, that Mr. Campbell was himself guilty of negligence, the showing of the defendant in this record is not very satisfactory. Mr. P. H. Mitchel, employed as a car inspector of the Mobile & Ohio Railroad Company, was an eye-witness to the collision, being some one hundred yards north of the crossing. He testifies that he heard Mr. Underwood on the crossing "hollering for Mr. Campbell to jump." He was then asked:

"Q. Did you mean to convey the idea that the trains were about to strike when you first saw it? A. He (Underwood) had run across the crossing, and was hollering for Mr. Campbell to jump out of the engine. . . . Q. When you first saw the crossing was it vacant, or Mr. Campbell's engine on it? A. Mr. Campbell's engine was standing on it. Q. When you first saw it, could you see the Mobile & Ohio freight train coming from the south? A. Yes, sir; when he was hollering. Q. What was Mr. Underwood saying? A. He was hollering for Mr. Campbell to jump. Q. What did he have in his hand, if anything? A. He had a red flag. Q. He ran around on the north side of Mr. Campbell's engine hollering for Mr. Campbell to jump? A. yes, sir."

And on cross-examination:

"Q. When you first saw down there you saw the crossing was blocked by Mr. Campbell's tank? A. Yes,

sir. Q. The next thing you saw was, Mr. Underwood came around the tender? A. Came around the tender. Q. You saw that plainly yourself? A. He came around. . . . Q. To the end of the tank? A. Hollering for him to jump.''

Thus saith the defendant's own witness and the defendant's own employee. The testimony out of the mouth of the defendant's witness demonstrates that Campbell had possession of the crossing; that he was not anticipating danger; that Mr. Underwood, on account of the presence of Campbell's engine, had to run around the end of the tender to get on the right hand or the engineer's side of the engine to make sure of his warning. He was loudly and excitedly calling to Campbell to jump. If Campbell had been negligently approaching the crossing with his engine, then manifestly at the time of the collision Campbell's engine would not have been stationary on the crossing, and that, too, for such length of time as compelled Underwood to run from the south to the north side of this engine in pleading to Campbell to jump.

Keeping in mind, then, the facts of the case, there is no real cause to complain at instruction No. 1 because it authorizes the jury to return a verdict for ''full damages.'' The word ''full'' is here more nearly synonymous with the word ''all,'' and simply means such damages as the jury think the plaintiff is warranted in receiving.

There can be no question but that the jury was fully warranted in believing that the defendant violated both sections 4046 and 4047 of the Code, and if it violated either, plaintiff was entitled to recover ''without regard to mere contributory negligence.''

It only remains to determine then whether the instruction should be condemned because it embraces the hypothesis contemplated by section 1353 of the Code. We are of opinion that it was not necessary for the plaintiff to invoke this statute at all; and that the invoking of the

statute under the facts of this particular case was immaterial, and constitutes harmless error. By this statute the Mobile & Ohio employees on this particular occasion would have been required to bring their train to a "full stop just before" coming upon the crossing; that is, if the statute has any application at all to a case of this kind.

But regardless of the statute, the Mobile & Ohio train would have been required to come to this same "full stop" before plunging into Mr. Campbell's engine. The duty imposed by the statute under the facts in this case is also imposed by the general law of negligence. The plaintiff was not required to invoke section 1353, and any instruction which imposed upon the defendant the duty in this case to come to a full stop was a proper instruction, announcing the substantive law of the case regardless of what the statute says, and regardless of whether the statute has any application at all, and regardless of whether the defendant had, under the facts in this case, a right to plead contributory negligence. In this connection we observe that, even though the plaintiff, Campbell, had proceeded upon the Frisco crossing without exercising due care, if he had possession of the crossing before the Mobile & Ohio train got to it, then it would follow that he who was first in time was first in right. Although Campbell might have taken possession of the crossing wrongfully, this would not authorize the employees of the Mobile & Ohio train to run over him or knock him off. This is not a case where Mr. Campbell ran into a Mobile & Ohio train in violation of a flag warning, but the evidence indisputably shows that Conductor Underwood was standing upon the crossing, not for the purpose of flagging trains generally, but primarily for the purpose of catching his own train as it proceeded up the main line of the Mobile & Ohio tracks. The evidence indisputably shows, further, that he attempted to flag down his own train, and would have succeeded in doing so had

the cars held together.   Under the circumstances, then, it was impossible for his train to have complied with section 1353 of the Code.   It would be idle to say that a cut of loose cars is under a duty to stop, look, and listen before going upon a crossing.   The application of the statute in no wise added to or took away the obligation imposed upon the defendant, but the duty imposed by the statute and the instruction given by the court did clearly announce what the law is, even if the statute had never been enacted.   The defendant says that this instruction should be condemned because it imposed upon the engineer the duty of coming to a full stop, and the statute has no application in determining the liability of a railroad company, but does regulate the conduct of the engineer and only imposes a duty upon the person. It is manifest, however, that the duty in this case was upon the railroad company, acting by and through its servants and employees, to stop this train before it collided with the Frisco engine.

As applied to the facts of the case, instruction No. 1 properly defined the duty imposed upon the defendant, and it only remains to determine whether the words "full damages" nullified the defendant's plea of contributory negligence. Conceding for the purpose of argument that the plaintiff was guilty of contributory negligence, even then the jury in deliberating upon a verdict and in arriving at the amount of that verdict would first be compelled to determine the full extent of plaintiff's injuries in accordance with the directions of the instruction complained of.   The purpose of our comparative negligence statute is to authorize a negligent plaintiff to recover, but to recover only an amount diminished in proportion to the negligence of the respective parties to the litigation.   The very word "diminish" presupposes some fixed amount to be cut down or subtracted from.   A jury, in ascertaining what amount they will award the plaintiff, would naturally direct their minds to the ex-

tent of the injuries—the full amount of damages—and then determine the proportion of negligence which the evidence shows each party was guilty of. There would necessarily be some starting point for the jury—some basis from which the calculations are to be made. If the jury did not first ascertain the full damage and accept this as a basis for their calculation, then they would be figuring in the dark and without a legal criterion of any kind. Their verdict thus arrived at would be about as certain as a survey made without any starting point. The instruction complained of in no wise sought to deny to the defendant its right to have the doctrine of comparative negligence submitted to the jury on proper instructions. The defendant did obtain instruction No. 8 whereby the issue of comparative negligence was duly submitted. Instruction No. 1 did not tell the jury that they must return full damages regardless of contributory negligence. It said nothing about contributory negligence. It was the contention of the plaintiff that there was no contributory or comparative negligence. He had a right to present his contentions according to his proof. The word "full" had no particular significance. If this word had been left out, the instruction would have meant the same thing. In the case of *Lindsey Wagon Co. v. Nix*, 108 Miss. 814, 67 South, 459, our court expressly held:

"Under the law in this state regarding instructions, when it is desired that the jury be told of the statutory law that contributory negligence will operate to diminish damages, the party so desiring that information on the subject be given to the jury must present to the trial judge proper instructions in writing containing such information."

The present case falls within the principles of the Nix Case just referred to. In the case note on the federal Employers Liability Act in volume 8 of Negligence Compensation Cases Annotated, on page 24 it is said:

"The burden of proving the defense of assumption of risk or contributory negligence is upon the defendant. *Seaboard Air Line R. Co.* v. *Moore,* 228 U. S. 433, 33 Sup. Ct. 580, 57 L. Ed. 907."

The language of the federal act in reference to comparative negligence is almost identical with the language of our statute.

The plaintiff in this case had the absolute right to recover regardless of contributory negligence. The defense of contributory negligence is always an affirmative defense, and the burden of proof as to it is upon the defendant. This is the rule in Mississippi and the rule enforced in federal courts. By the express provision of our statute all negligence is now a question for the jury.

It is next contended that instruction No. 2 misled the jury as to the measure of damages. This instruction reads:

"The court instructs the jury for the plaintiff that the measure of damage, if the jury believe that the plaintiff has been injured by the negligence of the railroad company, is the amount that will compensate him for his injuries, and in computing this amount it is proper for the jury to take into consideration his actual damage, including mental and physical pain, loss of time, expense, and doctor's bill, drugs, etc.; and, if the jury believe by a preponderance of the evidence that the plaintiff's injuries received by the negligence of the defendant are of permanent nature, then they may compute his future earning capacity by his expectancy, multiplied by his earning capacity, if the jury are satisfied from the evidence that he had an expectancy and earning capacity."

A portion of this instruction is singled out without giving proper weight to all the language employed. The instruction does state that if the jury believe that the plaintiff has been injured by the negligence of the railroad company "that the measure of damages, is the

amount that will compensate him for his injuries.'' By these words the jury are given to understand that compensation in this case is the end of the law. It is true the jury are further told that they may compute his future earning capacity by his expectancy multiplied by his annual earning capacity. The jurors are supposed to be expert triers of facts, and imbued with a wholesome amount of common sense. The verdict of ten thousand dollars is an absolute demonstration that the jury did not, in fact, allow an amount derived by computing his expectancy multiplied by his earning capacity. If they had done so, they would have multiplied two thousand four hundred dollars by sixteen and two-tenths per cent, making thirty-eight thousand eight hundred and eighty dollars, which, in connection with other damages testified to, would have approximated the sum of fifty thousand dollars. It is manifest that the jury did not respond to the literal terms of this language as employed in the instruction. We think, therefore, that, conceding error in the instruction, the error in this case is harmless.

Complaint is made that there is no qualification to the effect that the permanent injury received by the plaintiff resulted in total disability. The uncontradicted proof does show that the plaintiff was an experienced engineer, capable of earning and actually received no less than two thousand four hundred dollars per annum; that he was injured, and severely injured; that at the time of the trial he was unable to hold down the job of engineer, and, according to his testimony, would never be able to do so. The argument, therefore, that the instruction does not take into account the fact that Mr. Campbell might earn a little money in various ways is highly technical when applied to the facts reflected by this record. If an expert engineer has been rendered totally incapacitated to do service as an engineer, then certainly he has been denied the privilege of pursuing

his calling, and it is no abuse of the English language to refer to him as permanently injured.

One witness for the defendant testified that after the collision Mr. Campbell operated his train from Tupelo to Amory, and that on the trip to Amory there was an accident or wreck which caused the plaintiff, Campbell, to jump from his engine; that in this slight accident near Amory in which, according to the witness, the engine was derailed, the plaintiff was there injured, instead of being injured at Tupelo. There was evidence for the plaintiff which contradicted and impeached this testimony.

There is also an intimation of counsel that this is a fake case, but the defense of the railroad company in the trial of the case below does not appear to have been based upon this theory. If the evidence indeed showed that this was a fake case, then it should be reversed on the facts. The issue of fact has been settled by the verdict of the jury, and their findings should certainly not be disturbed, unless there is some reversible error in the application of the law. It is altogether plausible that the plaintiff was severely injured by falling broadside upon the brick or concrete pavement as a result of his excited effort to jump from his engine, and it is also plausible that his injuries did not fully develop until a day or two afterwards. The fact of his injury is supported by the testimony of his physician.

As above stated, there was no duty resting upon the plaintiff to negative by his instructions the affirmative defense of contributory negligence. Instruction No. 1 for the plaintiff and instruction No. 8 for the defendant, when read together, properly announce the law. There was no conflict one with the other.

There is no merit in any of the other assignments of error or contention raised by counsel for appellant.

If a plaintiff is required himself to ask charges from the court submitting the defense of contributory negli-

gence, it would impose upon the plaintiff a duty of confessing possible negligence on his part when under his proof he is entirely innocent.

This cause has been twice argued, has received our most careful consideration, and we see no cause to disturb the jury's findings.

*Affirmed.*

ETHRIDGE and SYKES, JJ., dissent.

ETHRIDGE J. (dissenting). I cannot accept the views of the majority in this case either as to the law or as to its statement of the facts. I think the facts are stated entirely too strongly for the appellee, and that, where the court differs as to the law applicable, it is highly important that the court agree as to its facts, and that the contentions of each party be fairly set forth in the opinion. If the statement of the facts in the majority opinion was for the purpose of showing there was sufficient evidence to go to the jury, and if there was a disagreement among the members of the court as to whether the evidence was sufficient to go to the jury, the statement of facts would be unobjectionable. However, all members of the court agree that the case on the facts was one proper to go to the jury, and the difference grows out of the giving of certain instructions.

I shall not undertake to set forth all the facts supporting the appellant's theory of the case, as I am in no sense a partisan for either party. I deem it necessary, however, to call attention to certain facts for the purpose of demonstrating the correctness of my view that there was error in the giving of instructions hereafter to be commented upon. It was the theory of the appellant, and its testimony sustains its theory, if accepted as true, that the appellant was entitled to the crossing at the time of the injury, and that it had a man with a flag on the crossing for the purpose of keeping any trains of the St. Louis & San Francisco from coming upon the cross-

ing while the Mobile & Ohio was in possession and entitled to the right of way. Mr. Underwood, of the Mobile & Ohio crew, testifies that he was standing on the crossing, protecting the crossing, and that Mr. Campbell, the plaintiff came upon the crossing in defiance of his flagging and in defiance of verbal warnings given him to keep off. He testifies that after Mr. Campbell ignored his flag and came on the crossing, he gave an emergency signal to the Mobile & Ohio crew to stop their cars, and that the crew, in undertaking to check their cars, applied the emergency brake, and that the cars came uncoupled by reason thereof. He is amply supported by numerous witnesses as to his statement about being on the crossing and flagging and as to his version how the injury occurred. It is in proof that the cars were of different heights, but that the cars and couplings conformed to the rules and regulations of the Interstate Commerce Commission, and that the couplings were in good condition. Each side had a cloud of witnesses to sustain its contentions, and there was a direct and palpable conflict in the evidence as to whether Campbell's coming on the crossing when he had no right to do so was the proximate cause of the injury, or whether Campbell was on the right of way and the injury was due to the default and negligence of the appellant. It was highly important, therefore, that the instructions bearing on the questions involved should be free from error.

It was further in testimony and testified to by numbers of witnesses that the appellee was not injured at all, but that he ran down the gangway, being the regular method of exit from the engine, and landed on the sidewalk on his feet, and that he did not fall at all, and that he stated immediately after the accident that he was not hurt, and he himself admits that shortly after the accident he stated that he was not seriously hurt.

It is further testified to by a defendant witness that Campbell carried his train on to Amory on the day of

114 Miss.—53

the injury, and that he made no complaint about being injured, and that one of the cars, when near Amory, was derailed, and that he jumped from said car and sprained his ankle and received some injuries, and that he went to a physician in Amory for treatment for said injuries. The physician at Amory was not introduced by Campbell, and the appellant could not introduce him because of the statute making communications to a physician privileged. Campbell ran to Tupelo from Amory the day following the injury, operating his engine, and then quit and returned to his home at Holly Springs, and was there examined by his own physician, which physician testified in the case. It appears from the physician's examination that the injury to Campbell was principally an injury to his kidneys, and there was not shown, either by Campbell or his physician, that there was any permanent injury to his ankle or back, but the injuries claimed were internal. The physician further testified that the trouble he found with the kidneys might be caused in a different way, and from disease, and there was a total failure to show permanent disability other that the mere statement of the appellee and his physician than he could not further pursue his calling as locomotive engineer; that is to say, no facts were shown which would prove a permanent total disability. There was nowhere in the evidence, as I can see, any fact or circumstance which would convince a person that there was total disability.

It was seriously argued by the appellant that there was not sufficient evidence to support the verdict, and that the overwhelming weight of evidence was against Campbell. We recognize that a jury who can see the witnesses, know their candor, know something of their demeanor and character, are better able to settle questions of fact than judges of this court, who only get the evidence from the printed page. If I were called upon to decide upon what appears in printed record, free

from any rule of law, and not having the advantage of seeing the witnesses and hearing them, I would be strongly inclined to accept the view that the evidence was not sufficient to sustain the verdict; but I recognize that a man of the probity of a Washington might outweigh, in the scale of weight and value in evidence, the testimony of numerous others who are unworthy of credit, and that there is no better system of determining facts than to have the judgment of twelve men of different avocations, exercising the powers of common sense, concurring in a unanimous conclusion. Long experience and observations of juries and jury trials convince me that the safest course is to rely upon the verdict of a jury where the evidence and law is fairly given to them, and I am not inclined to disturb their finding except for errors of law, either in admitting or rejecting evidence, or in the instructions bearing on the issues. But I think that certain instructions in this case are erroneous. Instruction No. 1 for the plaintiff below, which is set out in the majority opinion, informs the jury "that it was unlawful for a train, or part of a train, to back alongside a passenger depot at a greater rate of speed than three miles an hour and that within two hundred feet of said passenger depot a servant must precede the cut of cars not less than twenty feet nor more than forty feet, and that it is unlawful for a train, or part of a train, to go upon the crossing of another railroad track with its own, without coming to a full stop just before going on the crossing, and that if the jury are satisfied by a preponderance of the evidence that all or any of these laws were violated in the operation of the Mobile & Ohio train on the day of this accident, and that plaintiff received injuries on account of the said negligence of the said railroad company, then it is your duty, under the law, to return a verdict for him for full damages."

The statute requiring trains to come to a full stop before going upon a public crossing has nothing in the world to say about full damages or any damages. It prescribes a course of duty, but does not give full damages. Section 4047 of the Code with reference to backing into and along a passenger depot is the only statute involved in the above instruction that authorizes the jury to give full damages regardless of mere contributory neligence. When the statute authorized the recovery of full damages without regard to contributory negligence, it meant undiminished damages, that is, full compensation for the injury without any deduction whatever. The statute was designed to protect the public around passenger depots, and meant what it said when it came to a statement of the damages. The jury were peremptorily instructed in this instruction No. 1 to allow full damages in the event that either one of three statutes were violated, when two of the statutes embraced in the instruction did not authorize the jury to award full damages at all. To say that this instruction is not in conflict with the instruction given for the appellant, being No. 8 for the defendant, is to ignore the force and meaning of language. The one tells the jury that they were to give undiminished, complete, or full damages regardless of mere contributory negligence, and the other tells them that they will diminish the damages suffered to the extent of contributory negligence. Under the facts in this record there could be no dispute whatever that the cars did not come to a full stop before going upon the crossing, and if the jury were to give full damages if they believed this fact was equivalent to telling them peremptorily to find for the plaintiff for the full amount of damages regardless of whether he came upon the crossing in disregard of the flag of the defendant or not. If he came upon the crossing when the Mobile & Ohio Railroad Company had a right to the crossing, and came without himself coming

to a full stop and without looking to see the situation at the crossing, there could be no question but what the proximate cause of the injury was his own act and recklessness. The instruction No. 1 was drawn with skill for the very purpose, apparently, of eliminating the plaintiff's negligence from consideration of the jury.

It is idle to say that full damages does not mean anything. One of Webster's definitions is "without abatement or diminution," which is the proper one to use in a sentence like the one in the statute. The legislature must be presumed to be familiar with the meaning of ordinary English language, and when they singled out a particular location and situation and authorized the recovery of full damages under that situation, when they do not authorize it in the other situations involved in this instruction, is to carry conviction that the word "full" was used advisedly in section 4047, and this presumption is greatly strengthened when we consider the evident purpose of section 4047. The majority opinion practically writes out of the law the words "full damages" when used in an instruction, and gives effect to it when used in a statute. I think the bar will have some difficulty in determining exactly what that section of the Code means when read in connection with the majority opinion. It is inconceivable how a court can reconcile instruction No. 1 with the law, and how they can reach a conclusion that it is harmless error on the facts of this record. The argument in the majority opinion that instruction No. 1 was modified or affected by instruction No. 8, to my mind, is without merit. The two instructions are absolutely inconsistent and in conflict and present two direct and contrary rules for the guidance of the jury.

Instruction No. 2 for the plaintiff tells the jury that:

"The measure of damages, if the jury believe the plaintiff had been injured by the negligence of the railroad company, is the amount that would compensate him

for his injuries, and that in computing this amount it is proper for the jury to take into consideration his actual damages, including mental and physical pain, loss of time, expense and doctor's bill, drugs, etc.; and, if the jury believe by a preponderance of the evidence that the plaintiff's injuries received by the negligence of the defendant are of a permanent nature, then they may compute his future earning capacity by his expectancy multiplied by his earning capacity, if the jury are satisfied from the evidence that he had an expectancy and an earning capacity.''

This instruction does not state the law correctly, and is radically misleading. In the first place, it tells the jury that the measure of damages is the amount that will compensate him for the injuries, ignoring any reduction on account of his own negligence, if the jury believe he was negligent, but tells the jury that if the defendant was negligent, they will give the plaintiff what will compensate him for his injuries, and that if they believe his injuries are permanent, this measure is the earning capacity multiplied by the expectancy. It wholly ignores any reduction for contributory negligence, if the plaintiff was guilty of contributory negligence in going upon the crossing, which the defendant's evidence tended to prove. It is absolutely vicious in this: That it tells the jury that if plaintiff received injuries and such injuries are permanent, then they may compute his future earning capacity by his expectancy multiplied by his earning capacity, wholly ignoring the question as to whether the disability from the injuries is total disability. It is claimed that the plaintiff sprained his ankle. The jury may have believed that this was a permanent injury to the ankle, in which event they would proceed under this instruction to allow his earning capacity multiplied by his expectancy. There is no pretense in the evidence that the plaintiff, after the injury had no capacity to earn something in the way of a livelihood; even on his own testimony and that of his physician this deduction

could not justly be drawn. There is a vast difference between permanent injury and total disability.

Again, the instruction is faulty in that it does not contain a hypothesis that the present value of his expectancy is to be allowed instead of the total amount which would result from calculating the earning capacity by the expectancy. It is manifest that if the plaintiff was not totally disabled, he was not entitled to his full expectancy, even at its cash value, let alone its value multiplying the expectancy by the yearly earning capacity, as the instruction states it. .

In considering this instruction, we are bound to consider it in the light of the evidence in the record, and, taking the evidence as a whole, it does not justify an assumption of permanent injury resulting in total disability, and to say that this instruction is not erroneous and misleading is simply to trifle with justice. The allowance was for ten thousand dollars, a very substantal' sum for the character of injury shown even on the plaintiff's own testimony. This instruction cannot be reconciled or modified by any instruction given for the defendant, or for either party to the suit for that matter, in the record. If we assume that the jury found that the plaintiff was negligent in going upon the crossing over the flag of the defendant, and that the jury undertook to diminish his full damages estimated by multiplying his expectancy by his earning capacity and deducting therefrom the amount that his own negligence contributed to the injury, the finding of the jury may well have warranted the belief they allowed the full expectancy under this erroneous instruction. It is impossible to reconcile the instructions in this case, applied to the facts and the verdict rendered by the jury, with any idea that substantial justice was done. The instructions were glaringly misleading. The defendant's rights were wholly ignored in the giving of these instructions. Every person, great or small, rich or poor, individual or corporation, ought to be able to secure justice in the courts of the

land. It is the solemn duty of the supreme court to overlook and supervise the trials of the lower courts with the view of seeing that justice is administered with a fair and impartial hand, that the law is given fairly and equally to the litigants, as applicable to the facts and evidence in the case.

There are other errors in the record, but if the two instructions commented upon were eliminated, we would not consider these errors reversible; but when we take the whole record and look at this trial as a completed performance, the conviction is overwhelming that there has been a miscarriage of justice and a gross wrong to the defendant in this trial.

For the foregoing reasons I am of the opinion that the cause should be reversed and remanded.

As the cause is affirmed and there is no further trial to be had, I do not comment on the particulars of other features of the record.