## POUNDERS *v.* DAY.*

(Division A.   Oct. 1, 1928.)

[118 So. 298.   No. 27272.]

---

*Corpus Juris-Cyc References: Damages, 17CJ, p. 1096, n. 93; Motor Vehicles, 42CJ, p. 887, n. 69; p. 1220, n. 64.

*Young & Coleman,* for appellant.

*Leftwich & Tubb,* for appellee.

McGOWEN, J.   Wirley Pounders, appellant, filed his declaration in the circuit court of Monroe county against C. C. Day, appellee, for personal injuries alleged to have been inflicted on him by appellee, C. C. Day, in that he ran into him, on the public highway, with an automobile being run at an excessive rate of speed while passing wagons drawn by mules on the highway, and, as a result of said injuries, that the plaintiff was damaged in the sum of ten thousand dollars.

There was a verdict and judgment for the plaintiff, appellant here, in the sum of four hundred dollars.

The facts that we deem necessary to state tend to show that Wirley Pounders was a boy about fourteen years of age; that he was traveling in a wagon with his brother-in-law going west toward Aberdeen; and that he stopped on the right-hand side of the road at the family mail box; that he was eating cake and in the act of taking the mail from the box on the south side of the road, when appellant, Day, traveling in the opposite direction going east toward Columbus, ran against the boy and knocked him some twelve or fifteen feet along the edge of the road further east from the mail box.

The plaintiff's evidence tended to show: That Day was driving at a high rate of speed, estimated from twenty to forty-five miles per hour, just immediately before the boy was struck by the automobile. There was a team and wagon traveling in the same direction of Pounders immediately in front, and a truck immediately behind him.   As a result of the collision, the boy was unconscious for several hours; the back of his skull was fractured, and there was a fracture of the bone in his right hip, and his eyes were injured.   The boy was immediately carried by Day to the Coleman Hospital in Aberdeen,

where he remained for more than fifty days. For several days it was thought he would die, and the fractured hip was not treated until it was discovered that the skull fracture would not cause his death. Then for more than thirty days the boy's hip and leg were in a plaster paris cast, and, according to the doctor, there was a perfect setting and adjustment of the hip. That the boy did not limp afterwards, and was, apparently, well. That the concussion caused by the fracture of the skull affected his eyes causing him to see double. According to the boy, his eyes were crossed. The doctor testified that on a casual examination, a few days before the trial, which occurred about a year after the accident, the boy was apparently well. The boy testified that he could not work to do any good; that his leg hurt him every evening, and that he could scarcely see at all out of one eye, and that, before the injuries, he was strong and healthy, and had no physical ailment, and his eyes "were as good as anybody's eyes." The evidence of the boy and his witnesses tended to show that he was eating cake at the mail box as he was in the act of taking the mail from it, and that he was struck without warning or signal from the automobile; that he had seen the automobile about one-eighth of a mile down the road coming at a high rate of speed, but that the road was about twenty-six feet wide at that point, and he was on the edge of the road close enough to the mail box to take the mail therefrom.

The evidence of the defendant, and his witnesses, tended to show that, just before the accident, he saw the boy standing in the wagon, which had a bed or body about twelve inches in depth, as though he was about to jump from the wagon; that, seeing this situation, he put on his brakes slightly, and that the boy did not jump until he was within a few feet, when he saw the boy jump and immediately shoved on his brakes to their full extent, having a four-wheel brake, in good order, and swerved his car to the north in order to give the boy opportunity,

if possible, to make it across the road, but that the right fender of his car struck the boy and knocked him several feet; that he did all he could to stop his car and avoid the accident; that his car skidded; and that he was running, perhaps, twelve or fifteen miles per hour just before the accident; that, when he saw the boy was going to jump, he was running, probably, twenty-five miles per hour and had his car in neutral.

It will be seen from this statement of facts that the boy's theory was that he was guilty of no negligence, and that the act of striking him by Day was caused by the reckless driving of his car on the public highway at a greater rate of speed than eight miles per hour when passing teams traveling thereon; while appellee, Day's theory was that the boy leaped from the wagon to cross the road at a point not opposite the mail box, and that the boy's injury was entirely the result of his own negligence.

■ The first assignment of error is to the effect that the court erred in refusing to permit the plaintiff to prove that Day had the reputation in the country of being a reckless driver. There are two reasons why the court was correct in its ruling upon this question: First, because the question was not framed in accordance with the rule; and, second, because the evidence as to the general reputation of Day was not competent in this case. The question at issue was whether or not the driver was reckless on this occasion.

■ The second and third assignments of error are based on the refusal of instructions for the plaintiff, and the granting of instructions for the defendant, in which we find no error, as the instructions refused did not correctly invoke the comparative negligence statute, and the defendant's instructions were based on his theory that the boy's injuries were due solely to the boy's own negligence in attempting to cross the road in front of an on-coming car without looking or listening.

■ The fourth, fifth, and sixth assignments of error are directed to one main proposition, that the verdict of the jury for four hundred dollars was wholly inadequate, and that this verdict, in thus limiting the boy's recovery, evinces that the jury was animated by prejudice or passion; that the sum of four hundred dollars would not, in any wise, compensate the boy for the injuries which we have set forth in a general way; and that this court should affirm the case on the question of liability, and reverse and remand it for another trial on the question of damages.

It is urged by appellant that Day, the defendant in the court below, did not request an instruction seeking to have the damages diminished which flowed from the negligence of the plaintiff in leaping from the wagon. If the jury adopted defendant's theory of how the accident occurred, there was no instruction given by the court for either party announcing the law as set forth in the statute (section 516, Hemingway's 1927 Code; Laws of 1920, chapter 312), which statute diminishes damages proportionate to the amount of negligence attributable to the person injured. He further insists, and it is true, that the evidence, as a whole, shows that Day, appellee, was passing teams traveling on the highway, and was driving at a greater rate of speed than eight miles per hour. Section 6681, Hemingway's 1927 Code, reads as follows:

"No person running or operating, or causing to be run or operated a motor vehicle, shall pass a person driving a horse or horses or other domestic animals, or foot passengers walking in the roadway of the highway, at a greater rate of speed than eight miles per mile," etc.

It is true, on this record, that Day was violating this statute at the time of the injuries complained of, but it is also true that an injury must be proximately caused by the violation of a statute.

We agree with counsel for appellant that four hundred dollars is not compensation for the injuries sustained by this boy and the suffering he endured; but the jury may have applied to this case section 516, *supra,* and diminished the damages in proportion to what they conceived to be the lad's negligence in leaping in front of an automobile in motion and undertaking to cross the road in front thereof, notwithstanding no instruction had been given by the court to this effect for either party.

Let us bear in mind that appellee, the defendant in the court below, is not complaining here that this appeal is based mainly on plaintiff's assignment of error that the damages are inadequate. They are inadequate as full damages, but where the jury is authorized to find that both parties are negligent—in this case Day was violating the law in running at a rate of speed in excess of eight miles per hour, and the boy in leaping from a wagon in front of an on-coming automobile and undertaking to cross the road under these circumstances—this court is justified in saying that the jury found appellee's negligence was slight, and the boy's negligence was great, and that four hundred dollars was full compensation under all of these facts. The jury was authorized to do this, although, at a casual glance, it would appear that this court is committed to the construction of a statute that a party cannot complain unless the statute is invoked, and that has been the announcement of this court, but it has been limited in each case to the party who ought to have and who refused to invoke the statute. At any rate, the question is at rest in this state, in the recently decided case of *Chapman* v. *Powers,* 116 So. 609, wherein Judge Anderson, as the organ of the court, said:

"The jury may have reasonably found from the evidence that if the appellant's husband had been sufficiently sober he would have seen the gravel pile and avoided it. And, if the jury found such a state of case, they may have charged appellant with a large part of the negligence

proximately contributing to her injuries, and reduced her damages proportionately, *as they were authorized to do under the law.*" (Italics ours.)

In the above case we find that no instruction on the comparative negligence statute was requested by either party. This holding is not in conflict with *Lindsey Wagon Co.* v. *Nix,* 108 Miss. 814, 67 So. 459, *M. & O. R. R. Co.* v. *Campbell,* 114 Miss. 803, 75 So. 554, and *Y. & M. V. R. R. Co.* v. *Lucken,* 137 Miss. 572, 102 So. 393.

In the case of *Lindsey Wagon Co.* v. *Nix, supra,* the court held, in effect, that the plaintiff's instructions made due allowance for contributory negligence, and did not cut the jury off from considering it, and likewise held that the party desiring the benefit of the statute on "comparative" negligence must ask for it by written instructions, hence could not complain that the jury did not enforce it.

The contention in this case was that the plaintiff's instructions drawn on his theory of the case should have embraced the comparative negligence statute.

In the case of *M. & O. R. R. Co.* v. *Campbell, supra,* the plaintiff's instructions were to the effect that if the jury adopted the plaintiff's theory, they should allow *full damages* to the plaintiff, and the defendant, who was appellant, insisted that these instructions nullified his plea of contributory negligence, and the court again held that it was the duty of the defendant to invoke the statute by written instructions, and, not having done so, that the plaintiff was entitled to instructions on his theory of the case, and that the statute was not nullified, but that the jury simply did not apply it, and the losing defendant could not complain, because he had failed to invoke the statute himself by written instructions. This case is approved in the case of *Y. & M. V. R. R. Co.* v. *Lucken, supra.*

Viewing these cases together with the case of *Chapman* v. *Powers, supra,* we think there is no conflict in

these holdings. The case at bar is not a case where there was a heavy verdict against the defendant, but simply, as in the Chapman case, what is conceived to be an inadequate verdict has been rendered by the jury, which has applied the law as contained in section 516, known as our "comparative" negligence statute.

The cases are entirely different, and whatever sympathy we may feel for the plaintiff in the case at bar, it cannot be expressed in opposition. to the plainly announced rule of this court that the jury was the arbiter of this case under the law and the facts, and we cannot disturb its finding.

*Affirmed.*