## RAILWAY EXP. AGENCY, Inc. v. MALLORY.
### No. 12218.

Circuit Court of Appeals, Fifth Circuit.
May 28, 1948.

James L. Byrd, of Jackson, Miss., for appellant.

Ross R. Barnett, of Jackson, Miss., R. M. Kelly, of Vicksburg, Miss., and Chas. Engle and S. B. Laub, both of Natchez, Miss., for appellee.

Before SIBLEY, McCORD, and LEE, Circuit Judges.

LEE, Circuit Judge.

Appellee filed a complaint in the District Court of the United States for the Southern District of Mississippi, W. D., asking damages in the sum of $35,000 for personal injuries alleged to be the direct and proximate result of the negligence of appellant. The case was tried to a jury and the jury brought in a verdict for the appellee in the sum of $23,500. Appellant Express company having made timely motions for directed verdict and for a new trial, appeals on the ground that the verdict was not supported by the evidence and in the alternative that the verdict was excessive.

Mallory was employed as cashier by the Express company and had worked in that capacity in the Natchez office for three or four years. His duties required him to attend to the shipment and receipt of money and other valuables in a heavy burglar- and fire-proof safe. The safe was made to lie flat on its back with the dial on the upper side. Mallory alleged and testified at the trial that during the whole time that he was cashier and had to work with this safe the combination was in some way defective so that in order to open the safe he always had to lift it up and stand it on end in order to make the tumblers fall in place; and he further testified that he had often requested help for this lifting job but always in vain. Still further he testified that he complained obout the defect in the combination to the agent in charge of the Natchez office. On Febrauary 14, 1945, Mallory was at work, although he was suffering from stomach disorder, and as he lifted the safe he suddenly experienced a sharp pain in his back. It was afterwards proved that he had ruptured an intervertebral disc in the spine. He was operated upon, but he is still permanently disabled.

Mallory's testimony, which appears to have been given in a straightforward manner, was contradicted upon almost every point by the appellant's witnesses, but we cannot say that as a matter of law there was not sufficient evidence upon which to submit the case to the jury. The credibility of witnesses and the weight to be given to the evidence are matters for the jury. The question for the judge upon motion for directed verdict is "not whether there is literally no evidence, but whether there is any upon which the jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Redman v. Baltimore & Carolina Line, 2 Cir., 70 F.2d 635, at page 637. And on a motion for judgment non obstante veredicto "it is too well settled to warrant discussion that, on such motion, the evidence must be taken in the light most favorable to the party against whom the directed verdict is asked and that all conflicts must be resolved in his favor." Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 122 F.2d 350, 352. There was testimony from which the jury would have been amply justified in finding for the defendant Express company; on the other hand, if the plaintiff's testimony was believed, the jury could find the facts as the plaintiff related them.

While an examination of the record in this case has led us to the conclusion that the trial judge might very properly have granted appellant's motion for a new trial, we do not find that he failed to exercise his discretion,[1] nor can we say that his denial of the motion was an abuse of discretion. In the alternative, the lower court might properly have required a remittitur, again a matter of discretion. But there are present none of the special circumstances which would subject the action of the court below to review by this court.

We think that the case would have justified application of Section 1454, Mississippi Code, 1942 Ann.Laws 1910, c. 135, which adopts the rule of comparative negligence. This court has held that the statute is part of the substantive law of Mississippi and must be followed by the federal court sitting in that State. Mississippi Power & Light Co. v. Whitescarver, 5 Cir., 68 F.2d 928. Appellee knew on the day of his injury that the safe was very heavy and that he was not in his usual good health. His failure on that day to ask for help, which the evidence shows was available, might have been thought by the jury to have been negligent had they had the question precisely before them. But under the Mississippi cases a defendant may not have the advantage of Section 1454 unless he pleads contributory negligence[2] and requests an instruction on comparative negligence and diminution of damages. "In Mobile & O. R. Co. v. Campbell, 114 Miss. 803, 75 So. 554, it was held that the defense of contributory negligence is always an affirmative defense, and the burden of proof as to it is upon the defendant, and that it was the duty of the defendant, if it desired to have the damages

---

[1] See Felton v. Spiro, 6 Cir., 78 F. 576.

[2] And see Rule 8, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

diminished in accordance with the statute, to procure an instruction to this effect. It has also been held by the court that contributory negligence, being an affirmative defense, should be pleaded if relied upon. The same construction was given to the statute (chap. 135, Laws 1910) in Lindsey Wagon Co. v. Nix, 108 Miss. 814, 67 So. 459." Gulf & S. I. R. Co. v. Saucier, 139 Miss. 497, 104 So. 180, 181; and see Moore v. Abdalla, 197 Miss. 125, 19 So.2d 502.

In the Gulf & S. I. R. Co. case it was further held that absent the proper pleading and request for an instruction the appellate court is powerless to remedy the defect. We are in the same position. We must take the record as we find it, and in respect of matters resting within the sound discretion of the trial judge, there is in this court no power of review "save in the most exceptional circumstances." Aetna Casualty & Surety Co. v. Yeatts, supra; Fairmont Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 53 S.Ct. 252, 77 L.Ed. 439; Houston Coca-Cola Bottling Co. v. Kelley, 5 Cir., 131 F.2d 627.

The judgment appealed from must be affirmed.

SIBLEY, Circuit Judge (dissenting).

This case is notable because all four judges concerned, trial and appellate, have thought the verdict wrong, the trial judge and a majority of the appellate judges holding, however, there is no remedy. We appellate judges in the federal system indeed have no power to review verdicts as such. We do not on writ or error (now called appeal) try the jury for what they did, but we try the district judge for what he did or did not do, which was wrong in law and under the circumstances in the record affected or may have affected the substantial rights of the losing party. 28 U.S. C.A. § 391. The duties and powers of the trial judge arise from the Seventh Amendment of the Constitution. We have the right and duty to see that the trial judge has exercised them.

The Seventh Amendment is, "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury *shall be preserved,* and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the *rules of the common law."* (Emphasis added.) The rules of the common law as they stood in 1790 were thereby frozen as of that date as respects the jury's findings. At common law, *after* the facts were decided by the jury, the verdict could be set aside only by the grant of a new trial by the trial court, or by a reversal by an appellate court for error in the trial. Parsons v. Bedford, 3 Pet. 433, 7 L.Ed. 732. *Before* verdict the trial court had the duty to see if the evidence which is most favorable to the party having the burden, with all reasonable deductions from it, if believed, would support the desired verdict. This is a question of law. The trial judge does not then concern himself with the evidence as a whole or the probable truth of the case. He would usurp the function of the jury and deny a jury trial if he did. Fundamentally different is his power to grant a new trial *after* verdict. He of his own motion or on motion of the losing party may then consider the evidence as a whole, and weigh it, and if he thinks the jury was mistaken, or acted from passion or prejudice, or otherwise went against the plain truth, or he himself had erred, he could *in his discretion* grant a new trial. In so doing he did not deny a jury trial, but called in another jury to say what they thought. A second concurrent verdict was rarely, if ever, set aside. This common law was enacted into statute in Chapter 20 of the Judiciary Act of 1789, still carried in the first sentence of 28 U. S.C.A. § 391: "All United States courts shall have power to grant new trials, in cases where there has been a trial by jury, for reasons for which new trials have usually been granted in the courts of law." Those reasons were elaborately examined in the English cases by Judge Lurton in the Sixth Circuit and contrasted with the power to direct the verdict, in Mt. Adams & E. P. Inclined Ry. Co. v. Lowery, 74 F. 463. Judge Taft, for the same court, reexamined the matter in Felton v. Spiro, 6 Cir., 78 F. 576, holding that though a verdict ought not to have been directed, the trial court was

bound to exercise his other discretionary function on a motion for new trial, and that the failure to do so required a remand for such exercise. Judge Harlan wrote reaffirming the doctrine of these cases in Travelers' Insurance Company v. Randolph, 6 Cir., 78 F. 754. Our court drew the same distinctions and affirmed the same principles in Howard v. Louisiana & A. R. Co., 5 Cir., 49 F.2d 571. The particular grounds for a discretionary new trial, even on the court's own motion, are dealt with in 39 Am.Jur., New Trial, secs. 4, 9, 17, 22, 26: "The general rule at common law is that a new trial will be granted where an injustice has been done."

In the present case Mallory hurt his back by trying to raise on end a heavy safe while he was in a weakened condition. The safe was made to be dialed and opened while lying flat on its back, but Mallory said that for three years he could only open it if raised on end. He, as a matter of inference, thought that the combination was out of order, though no specific defect was proven or claimed. No one testifies how or why putting it on end would help things. Mallory himself testified (Record page 23) that nothing was found wrong with him on a previous physical examination "except my eyesight"; and (page 32) that he lifted the safe to the end that would make the combination set up where it could be read. Six disinterested, unimpeached witnesses testified that they had never had any difficulty in opening this same safe on its back during the time in controversy, and two of them, one a lady, who succeeded Mallory as cashier at Natchez, thus opened it in the presence of the jury. There had been no repairs made or change in its condition. It was proven without dispute that in order to work the safe in any position it was necessary to match the dial marks exactly with the mark on the safe. Mallory had bad eyes, and it is possible that he failed so to dial accurately. That he could not open the safe might, if considered alone, afford an inference that there was something wrong with the combination, but when every one else could and did open it on its back without difficulty the logical inference is that the trouble was with Mallory. The other inference cannot prevail against the unimpeached, positive testimony of many disinterested witnesses, even on a question of directing the verdict. Pennsylvania R. C. v. Chamberlain, 288 U.S. 333, 53 S. Ct. 391, 77 L.Ed. 819. The trial judge here indeed almost granted the motion to direct the verdict (page 201), saying in the jury's absence: "I am rather of the opinion that the motion was well taken but I am going to permit the case to be argued to the jury", adding that if the verdict was for the plaintiff the motion could be renewed.

Under Rule 50(b) of Civil Procedure a double barrelled motion was made for a judgment notwithstanding the verdict and in the alternative for a new trial. This Rule does not at all change the separateness of the two motions, nor the differing principles to be applied to each, but does require that the judge decide the question of law raised by the first and also exercise the discretion required by the second. Montgomery Ward and Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147. Pruitt v. Hardware Dealers Mut. Fire Ins. Co., 5 Cir., 112 F.2d 140. Six months later the judge overruled the motions, filing an opinion and a letter to counsel. From these I think it clearly appears that he either erroneously thought the two motions were controlled by the same principle, or else gave no consideration and exercised no discretion as to a new trial. The letter reads: "Gentlemen: I have considered the case very carefully and reached the conclusion the verdict of the jury must stand. It is not the judgment I would have rendered had I been on the jury. However under the recent decision of this circuit and the recent decision of the Supreme Court of the United States, both of which are cited in the opinion, I think there was an issue of fact for the jury." The opinion states the rule as to applications for a directed verdict that all evidence favorable to plaintiff must be taken as true. Its whole argument goes on that basis. Not once is the motion for new trial mentioned, or its main grounds that the verdict is against the overwhelming weight of the evidence, and the damages awarded so excessive as to indicate passion and prejudice. It was simply held that circum-

stances may raise an issue with positive testimony, citing Tombigbee Mill & Lumber Co. v. Hollingsworth, 5 Cir., 162 F.2d 763, and Myers v. Reading Co., 331 U.S. 477, 67 S.Ct. 1334, 91 L.Ed 1615. The former case does not mention a motion for new trial or the judge's failure to exercise discretion about it. It simply says the evidence was sufficient to support the verdict on the jury question involved. The Myers case also involved only a motion for directed verdict. The holding was that the failure of a brake to operate in the hands of an experienced brakeman afforded a ground to infer that it was defective. It does not appear that there was testimony to rebut this inference that the brake worked well for all the other brakemen who used it. I think the Chamberlain case rather than the Myers case applies here, and the verdict should have been directed; but if there was a jury issue raised which precluded directing a verdict, that does not kill the motion for new trial. I repeat that the trial judge was in error in thinking it did or else he failed to consider the grounds of the latter motion at all.

The verdict seems to all the appellate judges too high. Mallory testified that his medical and drugs bills would come to $1,000 and that he lost a full year's salary, $2,220. He then got light work, but did not say how much it paid. He still suffers. One of his doctors testified that a majority of patients got well after an operation like his; his other doctors said 80 percent recovered, but that others continued to have pain and Mallory could probably never do heavy lifting or hard labor. The jury evidently in their verdict gave $3,500 as monetary loss to the time of verdict and $20,000 for pain and suffering and possible future monetary loss. There was in evidence the facts that Mallory had two little children, that his wife had lost her position because of ill health, and their home had been sold. These legally irrelevant matters might easily have caused a passion of sympathy to operate. The contention of excessiveness is not for the appellate court, but it did deserve consideration by the trial judge. He ought to have told the jury that compensation for future losses should be discounted to their present value; and that if Mallory was negligent in undertaking to raise the safe alone in his weakened state under the law of Mississippi the damages should be diminished by the jury in proportion to the amount of negligence attributable to him. Sect. 511, Mississippi Code of 1930; Mississippi Power & Light Co. v. Whitescarver, 5 Cir., 68 F.2d 928; Tombigbee Mill & Lumber Co. v. Hollingsworth, supra. These instructions were a necessary part of the applicable rule of damages, and should have been given without request. It does not matter that there was no pleading about contributory negligence, for the evidence about it was voluminous, and not objected to. Safety bulletins were posted where Mallory worked, and the first rule in them was "1. Do not attempt to lift something beyond your capacity. Call for assistance when it is required." Numerous witnesses testified that it was the duty and practice of all employees to assist each other in such circumstances. The witness Reed so testifies and that he was nearby when Mallory hurt himself and would have helped if called on. Mallory testified that Reed was within a few feet of him and he did not ask for his help. He refused to say yes or no as to the Company's rule requiring mutual help. He only specified an occasion two years before when he asked someone to help him who made an excuse. Mallory claimed that the local agent had been previously asked to designate a helper, which the agent denied. All this makes a fair jury issue of Mallory's negligence, for he knew how heavy the safe was, how weak he was, had been warned not to exceed his strength, and to call for help, and knew Reed was in reach. Rule 15(b) requires that the issue, though not pleaded, "shall be treated in all respects as if they had been raised in the pleadings."

On the whole case I think there was error in law enough to reverse an apparently wrong trial; and certainly a case for the trial judge on motion for new trial to deliberately scan his own and the jury's conduct to see whether injustice has not been done and whether justice will not be served by a new trial. Compare Dattola v. Burt Bros., 288 Pa. 134, 135 A. 736, 51

A.L.R. 205. I think we should remand the case with direction to consider the motion for new trial apart from the motion for judgment non obstante and on its own separate merits.