Dean Louise **FITZ–PATRICK**, Independent Executrix of the Last Will of J. E. Fitz-Patrick, Deceased, Appellant,

v.

**COMMONWEALTH OIL COMPANY**, Appellee.

No. 18130.

United States Court of Appeals Fifth Circuit.

Dec. 30, 1960.

Sterling W. Steves, Tilley, Hyder & Law, Fort Worth, Tex., for appellant.

Thad Grundy, Hutcheson, Taliaferro & Hutcheson, Houston, Tex., for Commonwealth Oil Co., appellee.

Before RIVES, JONES and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

The appellant, plaintiff below, appeals from an order of the district court dismissing the complaint for failure to state a claim upon which relief may be granted.[1] The suit is for specific performance of a contract and, in the alternative, for damages. The sole issue for decision is whether the complaint alleged the happening of a condition precedent to the existence of the contract on which the complaint is predicated. The condition was the consent of the Republic of Haiti to the plaintiff's assignment to the defendant of a petroleum concession. The motion to dismiss is not grounded on a purely technical objection to the sufficiency of the pleadings, but rests on the contention that the pleadings show affirmatively that the plaintiff never obtained the Haitian Government's consent to the assignment in question.

We reverse. We hold that the complaint states a claim upon which relief may be granted. In reaching this result, we found it necessary to take a close look at the pleadings.

According to the original complaint, the Republic of Haiti, December 1, 1950, granted a fifty-year oil and gas concession to J. E. Fitz-Patrick covering the entire Republic of Haiti. May 11, 1951, Fitz-Patrick and others organized the Commonwealth Oil Company, defendant-appellee, under the laws of Florida. Fitz-Patrick was the president and a director of the company.[2]

June 1, 1951, Fitz-Patrick (and others having a beneficial interest in the concession) entered into a written agreement to assign the concession to Commonwealth "not only subject to royalties to be paid to the Haitian Government * * * but also subject to further royalties totaling two and one-half per cent to be paid concurrently with the payment of Haitian royalties" to J. E. Fitz-Patrick and three holders of a beneficial interest in the concession.[3] Contemporaneously with the execution of this agreement, Fitz-Patrick and his associates executed an assignment of the concession to Commonwealth, "subject to the consent of the Government of Haiti." Commonwealth agreed to "take over said concession together with all the rights, privileges and interest of [Fitz-Patrick] * * * to assume all of the obligations of [Fitz-Patrick] * * * as set up in the contract between Haiti and [Fitz-Patrick] * * * creating such concession". The agreement recites that Commonwealth "agrees to and does hereby accept the complete transfer and assignment to it of the Haitian petroleum concession * * * as if * * * it had been the original party granted said concession by the Haitian Government". The agreement was executed in triplicate, one copy to be forwarded to the Haitian Government with "the understanding" that Commonwealth would execute any further documents the government would require.

A dispute arose between Fitz-Patrick and Commonwealth and in March 1956 he made written demand that Commonwealth turn over to him and to his associates the royalty Commonwealth held "in trust for them * * * in Commonwealth's 50-year concession". November 13, 1957, Fitz-Patrick brought suit, alleging that the defendant held the overriding royalty of 2½% in trust for the plaintiff (and the three others); that the defendant refused to turn over the royalty to the plaintiff and instead converted the royalty to its own use.

1. John E. Fitz-Patrick, the plaintiff, died in 1958. His widow and executrix was substituted as party plaintiff.

2. This fact appears in the second amendment to the complaint.

3. On the basis of ¾ of 1% to J. E. Fitz-Patrick, ¾ of 1% to J. L. McCord, ¾ of 1% to Gordon R. Graves, and ¼ of 1% to Max Dennis. The concession was in Fitz-Patrick's name. Both Fitz-Patrick and Commonwealth, however, recognized the interest Fitz-Patrick's associates had in the concession.

The two amendments to the complaint clarify the relationship between Fitz-Patrick and Commonwealth and the relationship between Commonwealth and its subsidiary, Commonwealth Oil Company of Haiti.

The first amendment alleges that the contract of June 1, 1951, was authorized by a resolution of the Board of Directors of Commonwealth May 11, 1951. The resolution states that it is understood and agreed that the concession is subject to a royalty of 2½% in favor of Fitz-Patrick. The plaintiff then states that on December 14, 1951, the Government of Haiti approved the assignment to the defendant. Continuing, the "plaintiff shows that defendant subsequently incorporated itself under the Haitian laws so as to fully comply with the condition of approval by the Haitian Government". The notice of approval, addressed to Fitz-Patrick, advised him: [Y]ou will be able to transfer your rights, totally or in part to whichever company you deem fit, provided that said company has been incorporated under the Haitian laws".

The first amendment spells out the theory of the complaint that the overriding royalty was held in trust under the agreement of June 1, 1951, both as a continuing covenant, in the nature of a constructive trusteeship, inuring to the benefit of Fitz-Patrick, and as a condition of the assignment of the Haitian concession by Fitz-Patrick to Commonwealth. The plaintiff alleges that the value of the royalty, belonging to the plaintiff or held in trust for the plaintiff, has fluctuated; that on March 14, 1956, the date of demand, it was worth $100,000, while at the time of the amendment to the complaint it was worth only $50,000. The amendment asks for a declaration of the plaintiff's rights.

The second amendment is designed to meet squarely the motion to dismiss. First, in general language, the plaintiff states:

"Plaintiff shows that all conditions precedent have been performed or have occurred that were required by the terms of that certain agreement dated June 1, 1951, by and between J. E. Fitz-Patrick and Commonwealth Oil Company * * * * "

Then, going into particulars, the plaintiff alleges that the defendant satisfied the condition when it "incorporated itself in Haiti by causing a wholly owned subsidiary, Commonwealth Oil Company of Haiti, S.A. as a 'shell' or 'hull' corporation to be organized for the express purpose of securing the consent and approval of the Government of Haiti to the assignment and transfer of the oil concession from J. E. Fitz-Patrick to the defendant." Fitz-Patrick assigned the concession to Commonwealth Oil Company of Haiti in October 1952, without reservation or exception. The resolution of defendant's Board of Directors, authorizing the organization of the subsidiary corporation, states: "Whereas, this company * * * acquired oil, mineral and petroleum concessions covering the country of Haiti * * * and whereas, the Haitian Government requires that such concessions be held in the name of a Haitian corporation rather than in the name of this company itself. Now, therefore, be it resolved that the attorneys for this corporation be and they are hereby instructed to proceed with the proper organization under the laws of Haiti of a corporation or organization which will meet with the approval of the Haitian government for the purposes of owning, controlling and carrying out the contract between the Haitian government and Mr. J. E. Fitz-Patrick and others concerning said concessions; and be it further resolved that as and when said corporation is properly organized under the laws of Haiti that such documents be prepared and properly executed as will be necessary to transfer all concession rights of this company and the individuals holding the same for this company, to said Haitian corporation, which Haitian corporation shall be what is commonly known as wholly owned subsidiary. * * * "

The second amendment contains also a long excerpt from a prospectus filed by the defendant in 1953 with the Securities

and Exchange Commission.[4] In this prospectus, filed long after the incorporation of Commonwealth Oil Company of Haiti and long after Fitz-Patrick's assignment of the concession to the Haitian company, the defendant represented that it was the "owner and holder" of a fifty-year oil concession covering all of Haiti, "subject to royalties of 12½% which includes 10% to the Republic of Haiti". The prospectus explained that the "royalty of 2½%, in addition to the 10% royalty to the Republic of Haiti, is reserved * * * ¾ of 1% each to Messrs. Fitz-Patrick, McCord, and Graves and ¼ of 1% to Max Dennis".

After the district court dismissed the complaint, the appellant moved for a rehearing, and attached to this motion a stipulation of facts. The stipulation contains a copy of the resolution of the appellee's Board of Directors approving the company's acquisition of the concession from Fitz-Patrick, referring to the agreement of June 1, 1951, by which Fitz-Patrick transferred the concession to Commonwealth, and referring also to the reservation of royalties of 2½% for Fitz-Patrick and three others. The stipulation contains also the resolution of the Board authorizing the organization of the Haitian corporation, "a wholly owned subsidiary", for the purpose of "carrying out the contract between the Haitian Government and Mr. J. E. Fitz-Patrick", since the "Haitian Government requires that such concessions be held in the name of a Haitian corporation rather than in the name of this company itself". In addition, the stipulation quotes at length from the prospectus Commonwealth filed with the Securities and Exchange Commission in 1953. Commonwealth refused to allow this stipulation to be presented to the trial judge while he was considering the motion to dismiss. The trial judge, however, in denying the motion for rehearing, stated in a letter opinion that he had taken this action after reviewing the whole record, including the stipulation. There is little, if anything of substance, in the stipulation not alleged in the two amendments to the complaint or included in the exhibits attached to the complaint as amended.

The first rule of Federal Rules of Civil Procedure, 28 U.S.C.A. is that rules "shall be construed to secure the just * * * determination of every action". Second in importance, if not in numbering, is Rule 8(f): "All pleadings shall be so construed as to do substantial justice." These abstract principles have gained content and particularity in innumerable situations in the federal courts as meaningful guides pointing in the direction of a trial court deciding a case on proof rather than pleading. 4 Cyclopedia of Federal Procedure § 14.07; 1 Barron & Holzoff, Federal Practice and Procedure, § 283; 2 Moore, Federal Practice ¶ 8.34 (2d ed.). Thus, a complaint should not be dismissed unless it appears with certainty that the plaintiff would not be entitled to relief under any set of facts he might elicit to support the allegations. Conley v. Gibson, 1957, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80; Leimer v. State Mutual Life Assur. Co., 8 Cir., 1940, 108 F.2d 302.

While Rule 8(f) sets forth an abstract standard of liberal construction to promote substantial justice, Rule 9(c) specifically exempts the pleader from the necessity of alleging detailed supporting facts to show the performance of conditions precedent. Rule 9(c) states that "it is sufficient to aver generally that all conditions precedent have been performed or have occurred." Rule 9(c), FRCP. The plaintiff's second amendment to the complaint tracks the language of this Rule, stating, "all conditions precedent have been performed or have occurred" that were required by the terms of the June 1, 1951, agreement be-

---

**4.** In the prospectus Commonwealth stated: "At the present time the Company's principal leaseholds and activities are located in the three following general areas: North Florida and Southwestern Alabama; South Florida, and the Republic of Haiti. * * * In Haiti the Company holds a fifty year oil and gas concession covering the entire Republic of Haiti."

tween Fitz-Patrick and Commonwealth. Going beyond the rule, the amendment details the facts supporting the theory of the complaint as amended. The trial judge was clearly in error therefore unless, as Commonwealth contends, the complaint demonstrated on its face that the consent of the Government of Haiti was *not* obtained to Fitz-Patrick's assignment to Commonwealth.

When a parent corporation dominates a subsidiary so that the subsidiary is an instrumentality or agent of the parent corporation, courts frequently disregard the corporate fiction. Consolidated Rock Products Co. v. DuBois, 1941, 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982; Chicago M. & St. P. R. Co. v. Minneapolis Civic's Commerce Ass'n, 247 U.S. 490, 38 S.Ct. 553, 62 L.Ed. 1229; Francis O. Day Co. v. Shapiro, 1959, 105 U.S.App.D.C. 392, 267 F.2d 669; see 1 Oleck, Modern Corporation Law, § 10 (III) (1958). The parent corporation may be held on the contract obligations of its subsidiary. Consolidated Rock Products Co. v. DuBois, 1941, 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982.

Here, the pleadings show clearly that the defendant organized Commonwealth Oil Co. of Haiti only because the Government of Haiti, in approving Fitz-Patrick's assignment of the concession, required that the assignee be incorporated under Haitian law. The resolution of the Board of Directors of the defendant corporation, December 27, 1951, openly states that the assignee was a "wholly-owned subsidiary", created for the "purposes of owning, controlling, and carrying out" the contract between Fitz-Patrick and the Republic of Haiti. The beneficial ownership of the concession was in Commonwealth, an ownership it enjoyed because of Fitz-Patrick's promotion of the Haitian concession and his original contracts assigning the concession to Commonwealth. We are strengthened in this conclusion by the fact that the defendant represented itself as the "owner and holder" of the concession, asserting its ownership in disclosures made to the Securities and Exchange Commission and to the public. These earlier representations clash head-on with the present insistence upon preservation of the corporate veil. We think that justice requires the resolution of this question by a trial on the merits.

The defendant wants to dance without paying the music. To escape payment, the defendant hides behind the corporate façade, insisting that there are two corporations, two transactions, when there is, for purposes of the Commonwealth-Fitz-Patrick relationship, only one transaction, one business, one corporation. The two corporations are dominated by one purpose: receiving the assignment of the concession, the ultimate benefits to go to the parent corporation. That is the plaintiff's story, as we construe the pleadings. It states a claim, the validity of which depends on the plaintiff's proof. We respect the corporate fiction, as do all courts. Nevertheless, we cannot allow it to prevail here where, if the pleadings speak truly, the fiction is being asserted to work a manifest injustice.

Assuming, as we must, the correctness of the pleadings, it appears that, for purposes of determining the legal consequences of the relationship between Commonwealth Oil Company (of Florida) and Fitz-Patrick, Commonwealth Oil Company of Haiti is nothing more than the instrumentality or agent of the defendant, a conduit between Haiti-Fitz-Patrick and Commonwealth Oil Company (of Florida).

The ruling of the lower court is Reversed and the cause Remanded for further action below.