**SOUTHERN LIFE & HEALTH INSURANCE COMPANY, Appellant,**

v.

**Gordon GRAFTON, Appellee.**

**No. 281.**

Court of Civil Appeals of Texas.

Tyler.

April 13, 1967.

Rehearing Denied May 4, 1967.

Bath & Turner, Robert M. Bath, Henderson, for appellant.

Gordon Wellborn & Rex Houston, Vaughan O. Stewart, Henderson, for appellee.

SELLERS, Justice.

We take the following statement of the nature and results of suit from Appellant's Brief:

"Plaintiff's suit is on a policy of life insurance issued by the Defendant on the life of Plaintiff's wife on August 1, 1965, Plaintiff alleging that the wife suffered a fall from a scaffold on September 30, 1965, and received serious injuries from which she died on October 16, 1965, Plain-

tiff alleging that he is entitled to recover the sum of $2,000.00, $1,000.00 attorney's fees, and 14% statutory penalties.

"The Defendant specially denied that the policy of insurance on the life of Plaintiff's wife was in force and effect at the time of her death because the policy provides:

" 'This policy shall take effect on the date of issue provided the assured is then alive and in sound health and free from accidental injury.'

"The Defendant alleged that at the time the policy was issued, the insured, Marjorie Grafton, was not in good health. The Defendant tendered a return of premiums received on the policy in the sum of $12.00. Because of false representations made in the application of insurance, which amounted to fraud, the Defendant alleged that Plaintiff was not entitled to recover.

"The case went to trial on April 5, 1966, before the Court without a jury and the Court entered judgment on August 5, 1966, allowing Plaintiff a recovery of $2,940.00 and costs of court.

"The Defendant, in open Court, gave notice of appeal to the Court of Civil Appeals and did, on the *1st day of September*, file its supersedeas bond in the amount of $5,000.00, conditioned as required by law.

"On August 11, 1966, the Appellant requested Findings of Fact and Conclusions of Law, and the Court did, on the 21st day of September, 1966, file in this cause its Findings of Fact and Conclusions of Law."

As appears from the above statement of the case by appellant, its defense to this suit is that insured was not in good health at the time the policy was issued and that she was suffering from a disease known as "diabetes mellitus."

The appellee testified that he and his wife were married on October 15, 1956,

and that Mrs. Grafton died on October 16, 1965. At the time of her death, Mrs. Grafton and her husband were living in Kilgore, Texas. The life insurance policy in question was issued to Mrs. Grafton on August 1, 1965. The policy provided that the insured, on the date of issuance of the policy, must be in sound health and free from accidental injury.

Appellee further testified that during the past several months prior to the issuance of the policy, his wife had not taken any kind of medicine and that she was working eight to ten hours per day. Mrs. Grafton had gone into the business of making figurines from plaster about five years earlier while she and her husband were living in Joinerville, Texas. She not only made the figurines but also peddled them in her automobile. During the several months preceding August 1, 1965, Mrs. Grafton was able to work full time in her plaster business and still do her housework. She made no complaint of pain to her husband during these periods of time.

On September 30, 1965, appellee and his wife were standing on a scaffold putting tar paper on the roof of the building where Mrs. Grafton made and stored her plaster products. The scaffold was about six feet above the ground. The scaffold broke and both appellee and his wife fell to the ground. Mrs. Grafton was unconscious for about two to three minutes, and two hours after the fall, appellee took his wife to the hospital where she was hospitalized by Dr. Echols. This was on a Thursday night and she remained in the hospital until the following Monday at which time she was released to go home. Mrs. Grafton resumed her work after returning from the hospital and appeared to be doing fine except that she made complaints that her head hurt her. On Thursday, October 14, 1965, when appellee went to work, his wife was still asleep. He stopped back by his house around 11 A.M. to get a cup of coffee and found his wife passed out in the bathroom. He took her to the hospital and she remained there until her death on October 16, 1965.

John Donnelly, the agent who sold the policy to Mrs. Grafton, testified that he solicited Mrs. Grafton's business and that she did not come to him to buy the policy. He stated that he had been around her on several occasions prior to selling her the policy and that he observed her as being a strong lady and being in good physical condition. He said he had visited Mrs. Grafton at her workshop on various occasions, and felt that she would be classified as an active person. It was his opinion that she was healthy, and his company did not require her to take a physical examination. Dr. Echols testified by deposition that he first saw Mrs. Grafton on September 30, 1965 at the Roy H. Laird Memorial Hospital in Kilgore. At that time he treated her for the injuries received in the fall from the scaffold. The diagnosis made by Dr. Echols was trauma to the chest, left leg and head. He ascertained from the history taken that Mrs. Grafton had diabetes and that she had taken insulin for about two years but that she had taken herself off it several months prior to September 30, 1965. A diagnosis of subdural hematoma was made only at autopsy. It was the opinion of Dr. Echols that the fall from the scaffold produced the subdural hematoma and that hematoma was the sole cause of death. On cross-examination, Dr. Echols stated that he was able to control Mrs. Grafton's diabetes and that she responded well to the treatment he gave her. His opinion was that Mrs. Grafton would have died from the subdural hematoma whether she had had diabetes or not. He did not think that diabetes caused her death. He stated that when he first saw her, there was nothing to indicate that Mrs. Grafton had diabetes and that he made this diagnosis only after obtaining a blood sugar. He further stated that Mrs. Grafton did not suffer from osteoarthritis or essential hypertension.

Dr. Gonzales, a specialist in pathology, from Tyler testified by deposition. He performed an autopsy on Mrs. Grafton at the request of Roy H. Laird Hospital. Dr.

Gonzales stated that the pathological diagnosis was made by him and showed that death was caused by massive subdural hemorrhage; that the hemorrhage was traumatic in origin and, based upon the history, it was his opinion that the fall from the scaffold was the producing cause; and that the diabetes which he found had no relation to Mrs. Grafton's death, his opinion being that the subdural hemorrhage was the sole cause.

Dr. Marlin Braswell, a witness for appellant, stated that he had treated Mrs. Grafton from April of 1963 until October of that year. He saw her in the hospital on April 20, 1963, at which time her chief complaint was pain in the back. The Doctor's notes reveal that he had attributed the back pain to the fact that Mrs. Grafton was a hard working type of lady and that the pain was due to her work. Dr. Braswell also found that Mrs. Grafton had diabetes and hypertension during the time he treated her in the hospital in April of 1963. He was able to correct both conditions and testified he brought the high blood pressure down to normal and the diabetes was controlled to such an extent that it was only ten percent above normal.

Dr. Braswell further testified:

"Q And during those five occasions she progressed to such an extent that you thought by early September of 1963 her diabetic condition was practically under control, didn't you?

"A It was under control.

"Q And you considered her as having control of that disease at that time, didn't you?

"A At that time.

"Q And it was so controlled that you yourself classified it as being practically back to normal, didn't you?

"A Yes, sir.

"Q And you took her off of the insulin yourself, didn't you?

"A I did.

"* * *

"Q Now, when you last saw her in 1963 you so told her that she was under control and could go about her normal duties, didn't you?

"A Yes, and put her on Orinex at that time.

"* * *

"Q So other than what you have told me you obviously do not know what her condition was in '64 or in '65, do you?

"A I do not.

"Q And the best you can do is to say that the last time that you saw her she was under control and back to practically normal, wasn't she?

"A That is right, as far as diabetes that I know of."

Article 21.16 of the Insurance Code, V.A. T.S. provides:

"Any provision in any contract or policy of insurance issued or contracted for in this State which provides that the answers or statements made in the application for such contract or in the contract of insurance, if untrue or false, shall render the contract or policy void or voidable, shall be of no effect, and shall not constitute any defense to any suit brought upon such contract, unless it be shown upon the trial thereof that the matter or thing misrepresented was material to the risk or actually contributed to the contingency or event on which said policy became due and payable, and whether it was material and so contributed in any case shall be a question of fact to be determined by the court or jury trying such case. Acts 1951, 52nd Leg., ch. 491."

This statute has recently been upheld by the Supreme Court in an opinion by

**218**

Chief Justice Calvert in the case of Lane v. Travelers Indemnity Company, 391 S.W. 2d 399, which states:

"If the quoted provision of the policy is intended to relieve an insurer of liability because of mere misrepresentations, without proof and findings of materiality, it runs afoul of Art. 21.16, Vernon's Texas Insurance Code, * *."

■ The foregoing Article certainly places the burden on appellant to show that the statement that insured gave to the effect that she had not suffered from diabetes was material to the risk or actually contributed to the contingency or event on which said policy became due and payable. All the evidence negatives the idea that Mrs. Grafton's death was due to diabetes, but on the contrary, her death was the result of the fall and injury.

A similar question of whether the statement was material was before the El Paso Court of Civil Appeals in the case of First Texas Prudential Ins. Co. v. Pipes, 56 S.W. 2d 203, where the Court in construing a similar statute, held that the statement in an application that the insured had not had consumption, which was false, was shown to be immaterial. The Court said the undisputed evidence showed that the consumption in no way contributed to the insured's death. The representation was of an immaterial fact and did not affect the risk assumed. There, the insured died of coronary thrombosis.

■ We are of the opinion that the evidence is sufficient to sustain the trial court's finding that the insured was in good health at the time she took the policy (Great American Reserve Insurance Co. v. Britton, Tex., 406 S.W.2d 901) and that the statement complained of became immaterial when the undisputed evidence showed that diabetes had no connection with the death of the insured.

Judgment of the trial court is affirmed.