James K. BETTES, Plaintiff-
Appellant,

v.

STONEWALL INSURANCE COMPANY,
Defendant-Appellee.

No. 72-1794.

United States Court of Appeals,
Fifth Circuit.

April 17, 1973.

Rehearing and Rehearing En Banc
Denied June 12, 1973.

John E. Collins, Oscar H. Mauzy, Dallas, Tex., for plaintiff-appellant.

Stanley M. Kaufman, Royal H. Brin, Jr., Dallas, Tex., for defendant-appellee.

Before GODBOLD, DYER and CLARK, Circuit Judges.

DYER, Circuit Judge:

On May 3, 1968, two days after his release from a hospital where he was treated for hemianesthesia, Bettes, an air line pilot, applied to Stonewall Insurance Company for two $25,000 occupational disability insurance policies, which were subsequently issued with effective dates of July 1, 1968. On July 25, 1968, Bettes suffered a cerebral vascular accident, became permanently disabled as a result, and shortly thereafter filed a claim under each policy. Stonewall refused payment pending an investigation of Bettes' insurance application in which he failed to mention his recent hospitalization, his family history of heart trouble, and his personal history of elevated blood pressure. Unable to obtain payment, Bettes brought this diversity action on the policies. After an initial judgment for Bettes based on the jury's answers to a series of special interrogatories, the district court set aside its judgment and entered final judgment for Stonewall. Bettes appeals and raises three questions for review. We conclude, however, that the district court ruled correctly on each issue and, therefore, we affirm.

The primary issue at the trial centered on the alleged misrepresentations that Bettes made in his insurance applications, and whether they constituted a defense for Stonewall.[1] After a trial devoted largely to the development of the substantive elements of the defense, Bettes belatedly raised another issue which continues as the most important point on appeal—whether Stonewall should be entitled to the misrepresentation defense at all because of its alleged failure to show compliance with Article 21.17, Insurance Code, V.A.T.S. Article 21.17 provides that, before an insurance company can rely on a misrepresentation defense, it must show on trial that within 90 days of learning of the falsity of any such representation it notified the insured that it refused to be bound by the policy.

## A. Amendment of Pre-Trial Order

■ Bettes first argues that the district court erred in refusing his request to modify the pre-trial order so that it would include, as a contested issue of law, compliance with Article 21.17. We disagree. The request was an eleventh-hour appeal to the district court made only after other trial tactics had failed. The pleadings had been completed, the discovery concluded, the pre-trial order entered, the evidence taken,[2] the charge conference held, the arguments to the jury finished, the jury charged, and the objections to the charge made before Bettes sought this modification of the pre-trial order to show his intent to rely on Article 21.17.[3]

■■ A pre-trial order, while not to be lightly set aside, should be modified if that action is necessary to prevent manifest injustice. Sherman v. United States, 5 Cir. 1972, 462 F.2d 577; Central Distributors, Inc. v. M. E. T., Inc., 5 Cir. 1968, 403 F.2d 943; Laird v. Air Carrier Engine Service, Inc., 5 Cir.

---

1. Stonewall raised the misrepresentation defense in its answer, and the pre-trial order included, as a contested issue of fact, "[w]hether plaintiff gave untrue answers to questions on the two insurance applications that were relied upon by defendant and were material to the risk involved."

2. Bettes did introduce some evidence that could bear on the Article 21.17 question, but it was not denominated as such. The effect of this evidence is discussed in the second section of this opinion.

3. The Article 21.17 issue was mentioned by Bettes at two earlier procedural stages of the trial, but the failure of the district court to rule in his favor at either of these times has not been presented as error on appeal. It was first raised in a motion for a directed verdict, filed in written form on the day the trial concluded. It next arose as an objection to the charge to the jury *after* the charge had already been given, despite the fact that no such instruction had been requested previously. This objection was followed closely by the attempt to amend the pre-trial order, which is one subject of this appeal.

1959, 263 F.2d 948; Fed.R.Civ.P. 16. *See also* Henry v. Commissioner of Internal Revenue, 5 Cir. 1966, 362 F.2d 640. The trial judge is vested with broad discretion in considering when a pre-trial order should be amended and we conclude that there was no abuse of that discretion here.

Bettes sought to amend the pre-trial order to include compliance with Article 21.17, not as a contested issue of fact as an element of Stonewall's defense, but as a contested issue of law. It is clear, however, that notice only arguably became a matter of law because of his own delay (until all the evidence had been taken) in apprising the district court of his intentions. If his requested amendment had been timely presented to the district court, evidence could have been adduced, which in turn would have made notice a question of fact for the jury and not a matter of law. Similarly, Bettes can glean no solace from the fact that the burden of proof on notice would have been on Stonewall if the issue had been contested. Although Stonewall was aware of the existence of Article 21.17, it was entitled to be surprised, as was the district court, when Bettes sought to inject it as a legal issue minutes before the case finally went to the jury. Any detriment to Bettes caused by denying the proposed amendment to the pre-trial order was occasioned by his own actions.

██ We see nothing in our holding that in any way conflicts with this court's recent pronouncement in Pacific Indemnity Co. v. Broward County, 5 Cir. 1972, 465 F.2d 99. In *Pacific Indemnity* the key issue—whether the county had been notified of a claim against it within one year of the claim becoming due—had been fully framed in the pleadings, thereby putting all parties on notice that a substantial disagreement of fact existed. When the pre-trial order then failed to include notice as an issue, the onus for this omission was placed on the party with the burden of proof on notice and Broward County was granted a judgment N.O.V. *See* 465 F.2d at 103–104. The facts in this case are readily dis-

tinguishable. Bettes was promptly put on notice by Stonewall's answer that the insurance company intended to rely on a misrepresentation defense, but at no time subsequently was the issue of notice as an element of that defense clearly drawn. In such a case, even with the ultimate burden of proof potentially on his opponent, a litigant cannot strategically lie behind the log until after the trial and receipt of evidence, argument, and charge to the jury before raising an issue not found in the pleadings nor included in the pre-trial order and then raise it when it is too late for his opponent to do anything about it. The manifest prejudice of such tactics would make a shambles of the efficacy of pre-trial orders and a fair trial.

B. *Notice Tried by Consent*

Bettes' second argument is that the district court erred in entering judgment for Stonewall after the insurance company failed to show compliance with Article 21.17, because he maintains that the issue of notice was tried by consent. Bettes claims that certain evidence offered by him was so particularly and uniquely appropriate to the issue of notice that Stonewall's lack of objection constituted implied consent for the issue to be tried, despite its omission from the pre-trial order.

██ At no time during the trial was a request made for an amendment of the pleadings to conform to the evidence, but Bettes correctly notes that this is not necessarily fatal to his argument. Fed.R.Civ.P. 15(b). Instead, the death knell for this argument results from a careful reading of the record which discloses no evidence that Stonewall gave any consent—express, implied, or otherwise—to trying this issue. Bettes' evidence did not pertain solely to the issue of notice, but had general relevance to the entire defense of misrepresentation. *See* Wirtz v. Savannah Bank & Trust Co., 5 Cir. 1966, 362 F.2d 857; C. Wright & A. Miller, Federal Practice and Procedure § 1493 at 466 (1971). Furthermore, for an issue allegedly tried by con-

sent, mention of it was conspicuously absent at the charge conference, in the arguments of both counsel to the jury, and in the charge to the jury. As such, without warning that this evidence was being offered to prove a new issue, its admission without objection cannot be said to be "implied consent" within the meaning of Fed.R.Civ.P. 15(b).

## C. Meaning of Article 21.16

Bettes' final argument is addressed not to Article 21.17, but to Article 21.16, Insurance Code, V.A.T.S. Article 21.16 provides that for an insurance company to assert successfully a misrepresentation defense, it must show on trial,

> that the matter or thing misrepresented was material to the risk *or* actually contributed to the contingency or event on which said policy became due and payable, and whether it was material *and* so contributed shall be a question of fact to be determined by the court or jury trying such case. (emphasis added).

From this language and from a dictum in Trinity Reserve Life Insurance Co. v. Hicks, Texas Civ.App.1956, 297 S.W.2d 345, Bettes asserts that a misrepresentation must be material *and* must contribute to the loss before that misrepresentation constitutes a defense to a claim under a policy. The district court's final judgment rejected this argument and held that it is sufficient if the misrepresentation either is material to the risk or contributes to the loss. We agree with that disposition.

Our court has faced this precise question once in the past in Fireman's Fund Insurance Co. v. Wilburn Boat Co., 5 Cir. 1962, 300 F.2d 631, cert. denied, 370 U.S. 925, 82 S.Ct. 1562, 8 L.Ed.2d 505. We there expressed our view that the disjunctive construction was the preferred alternative. *See also* Occidental Life Insurance Co. v. Bob LeRoy's Inc., 5 Cir. 1969, 413 F.2d 819, cert. denied, 396 U.S. 939, 90 S.Ct. 373, 24 L.Ed.2d 241. This disjunctive construction has also found

consistent, albeit implicit, support in the decisions of the Texas appellate courts. *See, e. g.,* Harrington v. Aetna Casualty & Surety Co., Texas Civ.App.1972, 489 S.W.2d 171; Odom v. Insurance Co., Texas Civ.App.1969, 441 S.W.2d 584, aff'd, Texas 1970, 455 S.W.2d 195; Southern Life & Health Insurance Co. v. Grafton, Texas Civ.App.1967, 414 S.W.2d 214.

Finding no error in any of the questions presented for review, we affirm.

Affirmed.

GODBOLD, Circuit Judge (dissenting):

The plaintiff is entitled to a reversal because of the refusal of the trial court to amend the pretrial order. But he has lost his appeal because this court, like the District Court, holds him responsible for a default which was not his but defendant's.

The major defense of the company was misrepresentation in the application for the policies. As its First, Second and Fourth affirmative defenses the company pleaded that plaintiff had intentionally made material false statements, representations and warranties in his application which were intended to be relied upon and in fact were relied upon by the insurer. The crux of the majority opinion is that this pleading of a misrepresentation defense in general terms put upon plaintiff the obligation to call to the attention of the court the provisions of Art. 21.17, Texas Ins.Code, which sets out the conditions under which the misrepresentation defense is valid, and the obligation to define as an issue in the pretrial order the insurer's compliance with that section. Having failed timely to do so, the plaintiff's belated injection of that issue justified the court in refusing to amend the pretrial order. In short, "[a]ny detriment to Bettes . . . was occasioned by his own actions." That conclusion conflicts with the Federal Rules of Civil Procedure and with the Texas law which we are bound to follow in this case. The party obligated to raise the issue of com-

pliance with Art. 21.17 was not plaintiff but defendant.

1. The defendant's duty to plead and prove compliance with Art. 21.17.

Fed.R.Civ.P. 8(c) requires the defendant to plead named affirmative defenses "and any other matter constituting an avoidance or affirmative defense." Rule 8(c) is concerned with "the pleading of matter that is not within the claimant's prima facie case." 2A Moore's Federal Practice, ¶ 8.27[2], p. 1842. What matters are part of the plaintiff's prima facie case and what matters are for defendant to assume by way of affirmative defense is a question of substantive law which, in a diversity case, is, under *Erie*, controlled by the law of the state. 2A Moore, Federal Practice, ¶ 8.27[2], at 1846–48 (2d ed. 1972); cf. Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943). Railway Express Agency v. Mallory, 168 F.2d 426 (CA5), cert. denied, 335 U.S. 824, 69 S.Ct. 48, 93 L.Ed. 378 (1948), was an appeal by defendant from a judgment against it in a personal injury case. This court declined to consider the applicability of the Mississippi comparative negligence statute because, under Missisippi law, a defendant may not avail himself of that statute unless he pleads contributory negligence, which, under Mississippi law is an affirmative defense, and requests an instruction on comparative negligence. The defendant having failed to affirmatively plead contributory negligence and to request instructions on the Mississippi

statute, we concluded that we were powerless to remedy the defect. In footnote 2 the opinion refers to Rule 8.

By its statute, Art. 21.17, Texas imposes specific conditions upon the existence of a defense of misrepresentation in the application.

Notice of Misrepresentations.

In all suits brought upon insurance contracts or policies hereafter issued or contracted for in this State, *no defense based upon misrepresentations made in the applications* for, or in obtaining or securing the said contract, *shall be valid, unless the defendant shall show on the trial* that, within a reasonable time after discovering the falsity of the representations so made, it gave notice to the assured, if living, or, if dead, to the owners or beneficiaries of said contract, that it refused to be bound by the contract or policy; provided, that ninety days shall be a reasonable time; provided, also, that this article shall not be construed as to render available as a defense any immaterial misrepresentation, nor to in any wise modify or affect Article 21.16 of this code. Acts 1951, 52nd Leg., ch. 491.

Tex.Ins.Code Ann. Art. 21.17 (emphasis added). With as much clarity as the English language allows, this establishes the conditions upon which the insurer has a valid misrepresentation defense— "no defense . . . shall be valid, unless the defendant shall show on the trial" the required notice to the insured.[1]

---

1. This is not an anomaly of Texas law. Art. 21.17 is but a particularized codification of general principles of insurance law. "While, generally, the insurer is not considered to waive its right to rescind until it becomes aware of the misrepresentations, once it does learn of such misrepresentations, the insurer is put to an election, and if it fails to declare the contract void, it will be estopped to claim a forfeiture.

"It is the duty of the insurer to notify the applicant of the invalidity or forfeiture of the certificate in order that he may take proper steps to protect himself."

3A Appleman, Insurance Law & Practice § 2055, at p. 569 (1967). The rationale is, of course, that the company may not, with notice, continue to collect and retain premiums while holding to its chest the "ace in the hole" of denying liability when the insured dies or becomes disabled before the premiums equal the coverage.

"An insurer . . . cannot knowingly accept the benefits of the policy and then reject its burdens." *Id.* § 9271, at pp. 691–92. Whether Texas wishes to implement this principle by requiring the insurer to affirmatively prove that it gave notice of intent to rescind, or by requiring

The Texas cases leave no doubt that unless the insurer alleges and proves Art. 21.17 notice not to be bound by the policy, the defense of misrepresentation is not available. In Milwaukee Mechanics' Ins. Co. v. Weathered, 234 S.W. 568 (Tex.Civ.App.1921), the court held:

> The fact that the policy to secure Langley was obtained by material misrepresentation will not avail as a defense in this case, for the reason that Revised Statutes, art. 4948 [a predecessor to Art. 21.17], provides that such a defense can be made available only where the insurer gives notice to the insured, within a reasonable time upon receiving notice of the loss, that he will defend on the ground that the same was obtained by fraud. No such defense was pleaded in this case, and no notice was given by appellant to appellee that it would rely upon such defense. Such being the case, appellee was entitled to recover herein, and the court did not err in rendering judgment in his favor.

*Id.* at 569. In Southern Sur. Co. v. Citizens' State Bank, 212 S.W. 556 (Tex.Civ. App.1919), the court held that failure formally to plead timely notice barred the misrepresentation defense:

> [I]t was neither averred nor shown that the [insured] was ever notified that [insurer] refused to be bound by the contract because of [the misrepresentations], nor, indeed, did it ever set them up as a defense at all until the filing of its amended answer on October 22, 1917, when it had been notified of the loss on August 14, 1916, and sued therefor on September 20, 1916. In these circumstances, the plain provisions of article 4948, Revised Statutes [the predecessor of Art. 21.17], which was likewise a part of the act of 1903, *barred the interposition of any defense* based upon the misrepresentations claimed.

*Id.* at 559 (emphasis added).

the insured to negative the giving of such notice, is a matter of Texas policy with

In National Guaranty Fire Ins. Co. v. King, 24 S.W.2d 501 (Tex.Civ.App. 1929), the court reviewed the record on appeal, and because it did not affirmatively indicate that the insurer had given timely notice, *refused to even consider* the misrepresentation defense. The court stated:

> In a number of propositions appellant complains of alleged misrepresentations in the procurement of the policy in question, and by virtue of which it sought to avoid the same. In reply to the above contentions, we think it is sufficient to say the record fails to show that appellant, by either pleading or evidence, sought to show that, after discovering said alleged misrepresentations, it gave the notice that it would not be bound by said policy as required by statute.

*Id.* at 505. In National Life Ass'n v. Hagelstein, 156 S.W. 353 (Tex.Civ.App. 1913), the court explained:

> The agreed statement of facts shows that [insurer] did not give such notice [as required by the statutory predecessor of Art. 21.17, containing the same relevant provisions]. It follows that it could not make the defenses offered by it, and it is immaterial as to what errors may have been committed in admitting evidence or in the charge of the court.

*Id.* at 356.

See also Prudential Ins. Co. v. Torres, 449 S.W.2d 335 (Tex.Civ.App.1969, writ ref'd n. r. e.) (defendant requested special jury findings on misrepresentations in the application, failed to request a finding on Art. 21.17 notice—held, notice issue waived); Guarantee Life Ins. Co. v. Evert, 178 S.W. 643, 647–648 (Tex. Civ.App.1915) (failure of company to formally plead Art. 21.17 bars assertion of misrepresentation defense); Commonwealth Bonding & Cas. Co. v. Wright, 171 S.W. 1043, 1044 (Tex.Civ.App.1914) (statement of the general rule); 32 Tex.

which federal judges have no right to quarrel.

Jur.2d, Insurance § 224 (2d ed. 1962) (statement of general rule).

The pretrial order issue is not a mere abstraction. There is evidence that immediately upon receipt of the policy plaintiff's wife wrote to the company pointing out that information relating to plaintiff's last hospitalization—the omission of which is the critical misrepresentation—was not included in the attachments to the policy. The company's subsequent dealings with plaintiff also are the subject of evidence in the case.

Defendant's obligation under Rule 8 (c) to affirmatively set out the giving of Art. 21.17 notice as a part of its misrepresentation defense could have been discharged by pleading in general conclusory terms that all conditions precedent to a misrepresentation defense had been performed. Rule 9(c) permits a party to plead in general terms the performance of a condition precedent.

> *Conditions Precedent.* In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity.

This court has held it sufficient merely to track the language of the rule by stating "all conditions precedent have been performed or have occurred." Fitz-Patrick v. Commonwealth Oil Co., 285 F.2d 726, 729 (CA5, 1960). Obviously this standard of pleading, advisedly adopted and less stringent than required at common law, does not authorize a party to omit all pleading of a condition precedent. Additionally, "the Rule [9(c)] is not intended to shift the burden of proof, nor to affect the ques-

tion whether any particular clause is merely a collateral proviso or is a condition precedent or subsequent." 2A Moore's Federal Practice, ¶ 9.04, at 1945.[2]

Thus quite clearly it was defendant's obligation to plead and to prove as part of its misrepresentation defense the giving of Art. 21.17 notice. This is not only good law but good sense. The occurrence of the event—the giving of notice—is, in the first instance, within the knowledge of the company. The instant plaintiff is in the anomalous position of being faulted for having failed to direct the court's attention to the statutory prerequsite to defendant's affirmative defense when the structure of pleadings do not even provide for him to create an issue in this manner. The only pleadings allowed are complaint and answer. Rule 7, Fed.R.Civ.P.

### 2. The fatal pretrial order.

I turn to the pretrial order, which was signed by counsel for both parties. It was, of course, intended to define the issues as then raised by the pleadings. The claims and defenses of the parties were succinctly set out.

A. *Plaintiff:* (1) That he is entitled to the proceeds, $50,000.00, of two airline pilot occupational disability insurance policies issued by defendant. (2) That he is disabled and is permanently prevented from carrying on his former occupation as an airline pilot. (3) That he is entitled to statutory penalties, interest and attorney's fees pursuant to Art. 3.62 of the Texas Insurance Code, the total amount of his claim being $71,000.00.

B. *Defendant:* (1) That plaintiff has failed to state a claim against defendant upon which relief can be granted.

---

2. Once the party pleading performance of a condition precedent has averred performance, if the adverse party wishes to controvert the performance or occurrence, the second sentence of 9(c) requires him to do so with particularity. In Ginsburg v. Ins. Co. of North America, 427 F.2d 1318 (CA6 1970), plaintiff affirmatively pleaded in general terms proof of performance of conditions precedent (one of which was timely proof of loss). The insurer made a general denial. The Tenth Circuit held that plaintiff's pleading was sufficient under 9(c), and that failure to file proof of loss was not an issue because defendant's general denial did not create it [as required by the second sentence of the rule].

(2) That plaintiff gave untrue answers to certain questions on the insurance applications (two); that these answers were untrue and were made to induce defendant to issue the policies in question; that defendant relied on these answers and would not issue the policies if true answers had been given by plaintiff. (3) That plaintiff was not in good health at the time the applications were signed by plaintiff. (4) That plaintiff's disability existed prior to the inception dates of said policies. (5) That Art. 3.62 of the Texas Insurance Code does not apply to this action.

*Again, defendant* did not make known to the court that it claimed to have given notice that it would not be bound by the policy or that it intended to "show at trial" that it had given such notice and within a reasonable time.

3. What happened at trial.

On the final day of the trial plaintiff moved for a directed verdict. One of his grounds was the following:

The evidence requires a finding in this case that defendant failed to issue notice to plaintiff of the misrepresentations upon which it has attempted to rely in this case. Defendant has not complied with the notice requirements of Article 21.17 of the Insurance Code of the State of Texas. Further, there is no pleading by the defendant to show that it did in fact give notice of misrepresentations discovered by it within a reasonable time after having discovered same. Therefore, as a matter of law, defendant is not entitled to its misrepresentation defenses in this cause.

This was denied.

Plaintiff objected to the charge to the jury in this manner:

Plaintiff says that, due to Defendant's failure to comply with Article 2117 [21.17] of the Insurance Code, that in the Charge in its present form there is an omission of a material element for the Defendant's case, and therefore, Plaintiff would request the following issue or question in its form or in a substantially similar form:

"Do you find from a preponderance of the evidence that the Defendant, Stonewall Insurance Company, within a reasonable time after discovering the falsity of any representation so made to it, gave notice to the Plaintiff that it would refuse to be bound by the contract or policies of insurance in question?"

With respect to that issue, Plaintiff would further request an instruction, according to Article 2117 [21.17] of the Insurance Code that ninety days shall be considered a reasonable time within which said notice must be given by the insurance company.

Plaintiff requests that that issue be submitted alternatively, if the Court is of the opinion that the Defendant's representation issue should be submitted at all.

This colloquy then ensued between the court and plaintiff's counsel:

THE COURT:

And it looks like it [Art. 21.17] might be applicable to this case.

MR. COLLINS [Counsel for plaintiff]:

I think it is, Your Honor.

THE COURT:

But the thing that concerns me is this; it is not in the pretrial order as a contested issue of fact.

MR. COLLINS:

Your honor, it is—

THE COURT:

Or a contested issue of law.

MR. COLLINS:

Your Honor, this is a material element of the Defendant's case, and it is up to him to prove this, and we have authority to support that, in that we have been preserving this all throughout the record, trying to find out when the Defendant discovered the falsity of this.

I didn't know what proof was going to be offered by the Defendant, Your Honor.

THE COURT:

Why wasn't, if it were a contested issue of fact, as you are now claiming the issue is, why wasn't it submitted, why wasn't it raised?

MR. COLLINS:

Well, Your Honor, I assume the reason it was not listed is because that it is material—in other words, it is in the misrepresentation defense itself.

In other words, the predicate, proper predicate has to be raised for the misrepresentation issue itself, and this would be a proper predicate.

THE COURT:

Well, isn't that a contested issue of fact in the case?

MR. COLLINS:

I don't know whether it would be or not.

THE COURT:

Well, you are requesting an issue on it, and you say it is an issue in the case, and you object to the Court's Charge on that ground, and you submit an issue, and under the Pretrial Order, under Paragraph IV, Contested Issues of Law, there is listed whether Article 3.62 of the Insurance Code is applicable, but nothing is said about Article 2117 [21.-17].

MR. COLLINS:

That is correct, Your Honor; there is also nothing mentioned about Article 2116 [21.16], with respect to misrepresentations, and that is part of the Defendant's case, again, Your Honor.

THE COURT:

Well, the thing that concerns us is that this is no issue in the case, and whether or not it is an issue of law or an issue of fact, that is the purpose of the Pretrial Order.

MR. COLLINS:

Yes, sir.

THE COURT:

And we won't get to this stage of the proceedings and have surprise. If it is surprise to the Defendant, and more particularly to the Court I want to know what issue I am trying, and this is not included in the Pretrial Order.

MR. COLLINS:

Your Honor, I would assume that the Defendant would know how to make out its own case on misrepresentation, and would know what those elements would include.

THE COURT:

Well, I would assume that when you sign a Pretrial Order you would understand what the contested issues of fact are, and you would list them in there when you agreed to it and ask me to enter that as the Order; that is what you are bound by; I think you are bound by what you say under Paragraph III as to the contested issues of fact, and under Paragraph IV as to the contested issues of law. I think you are bound by it.

\*    \*    \*    \*    \*    \*

MR. COLLINS:

I am sure it is, that the Court is correct, with respect to what is in the Pretrial Order, but I certainly do not intend to eliminate anything with respect to the Defendant's case and I assume he would still have the burden of proof on his issues, just like I would have on mine.

THE COURT:

All right. What do you say, Mr. Kaufman, as to the applicability of Article 2117 [21.17] in this case?

MR. KAUFMAN [Counsel for defendant]:

Your Honor, please, we feel that the deposition was taken of Mr. Wally Remdt —

THE COURT:

No; the applicability of Article III?

MR. KAUFMAN:

Well, no, I won't go back into it, Judge. We feel it does not apply because at the time—if the Court reads the insurance clause in the policies—

THE COURT:

I don't care about the deposition.

MR. KAUFMAN:

[Mr. Kaufman stated that he thought Article 21.17 did not apply because there

could be no claim under the policies for 12 months, and 12 months had not expired. Additionally, he stated there was evidence that within a period of 90 days after the policies were written there had been correspondence between plaintiff, his attorney and the company as to why the claim had been turned down.]

THE COURT:

All right. I will overrule your objection, Mr. Collins.

Plaintiff's position was wholly correct. But somehow, possibly because plaintiff was the moving party and stepped into the line of fire by calling the situation to the court's attention, he found himself thrust into the role of defending against defaults not his. That role has continued through this appeal in which the majority characterize him as "strategically lie[ing] behind the log." I am inclined to think that both counsel considered the issue in the case and tried it by consent without the judge's being made specifically aware of it. But if anyone "lay behind the log" it was defendant. The statements of defense counsel, just above described, reveal the insurance company's contentions that: (1) in view of the policy provisions, as a matter of law Art. 21.17 did not apply; and (2) as a matter of fact the company had given notice of intent to dishonor.[3] Both were matters which *defendant* was obligated to include in the pretrial order.

It was only in an effort to extricate himself from the position in which the court had placed him, that plaintiff sought to amend the pretrial order.

MR. COLLINS:

Your Honor, if the Court please, I have one other matter in that connection.

With regard to the Court's refusing the requested issue dealing with notice, as contended by the Plaintiff under Article 2117 [21.17] of the Insurance Code, Plaintiff now, at this time, pursuant to Rule 16 of the Federal Rules of Civil Procedure, hereby requests—

THE COURT:

I am not going to give you any more requests; you have made them.

MR. COLLINS:

Your Honor, I am simply requesting leave—not to the Charge. I am simply requesting leave to modify the Pretrial Order with respect to the notice issue as a legal matter and not as a fact matter.

THE COURT:

No. I am going to deny that request.

MR. COLLINS:

Note our exception.

THE COURT:

I will deny your request to modify the Pretrial Order at this time.

Plaintiff is no less entitled to relief from the erroneous denial concerning the pretrial order by reason of not specifying as error the denial of the motion for directed verdict and the overruling of his objections to the jury charge.

Though defendant claimed no surprise the record implies that the court was surprised. While I think the rules command otherwise, the most that can be said of plaintiff's responsibility for the incomplete pretrial order and the last-minute notice to the court of the Art. 21.17 issue, is that in some manner he shared the responsibility with defendant. The adverse consequences should in no event be visited solely upon plaintiff. While the problem presents itself in the form of "whose fault was it," the ultimate concern is whether in a system designed to dispense justice under liberally and fairly administered rules, the books will close on this case without plaintiff ever having had a chance for judicial determination of the notice issue. It is totally wrong to allow such a consequence in this case.

---

3. The insurer did not, as the majority opinion implies, claim surprise.

ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is DENIED and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is DENIED.

GODBOLD, Circuit Judge dissenting:

I dissent from the denial of the petition for rehearing.